GILBERT S. MANNING

*v.*

HENRY B. MCCLURE, AND BENJAMIN NEWMAN.

PROMISSORY NOTE — *assignment of, as security for precedent debt.* The indorsee of a promissory note before its maturity, taking it as payment or security for a pre-existing debt, and without any express agreement, shall be deemed a holder for a valuable consideration, in the ordinary course of trade, and shall hold it free from latent defenses on the part of the maker.

APPEAL from the Circuit Court of Morgan county; the Hon. D. M. WOODSON, Judge, presiding.

This was a bill in chancery, in which a decree *pro forma* was rendered in the court below, at the October term, 1864, and which was brought to this court upon the following agreed state of facts:

In 1856, or the early part of 1857, defendant Newman and seventeen others, who are still living, and whose names appear as such in the answers of defendants, and on the original articles in evidence in the case, entered into an association or company, under written articles of agreement signed by them, for purchasing and selling lands for profit, in the eastern portion of the State of Illinois. The stock of the company was $36,000. By their articles, and in fact, the company had the following officers, to wit, a president, secretary, treasurer, and a commissioner. All the business of the company, including the purchasing and selling of the lands and the giving of notes for same, was, by the articles of association, to be transacted, done, and made by the person filling the office of commissioner, as commissioner.

Defendant Newman, during the years 1857 and 1858, was

the commissioner of said company, and as such, and in the course of his business for said company, purchased many tracts of land, many of which they still own, and executed notes for them, executing all papers by the name and style of " B. Newman, Commissioner."

In 1858, and while said Newman was commissioner as aforesaid, and in the course of his business as such, said Newman purchased for said land company, and received a conveyance for them for the same, with general covenants of warranty and against all incumbrances, from one William Stevenson, who was also a member of said company, certain tracts of land, for which he gave notes signed by him as commissioner, and antedated to August 14, 1857. Among the notes thus given was the following :

" Aug. 14, 1857. August 14, 1860, I promise to pay, to the order of Wm. Stevenson, the sum of twenty-one hundred eleven dollars, at the —— value received.

$2,111.20.                    B. NEWMAN, *Commissioner.*"

The land thus purchased of Stevenson had been bought by him on the 14th of August, 1857, of one Sandford, and Stevenson received a conveyance and gave his notes and a mortgage on the land to Sandford for the purchase-money, bearing the same dates, for the same amounts, due at the same times and with the same interest as the notes which Newman afterwards, in 1858, gave Stevenson for the same land. Stevenson, who was an officer of the company, had purchased these lands, expecting that the company would take his purchase off his hands, and the above transaction with Newman was intended to effect this object.

After Stevenson became insolvent and failed in business, and on the 8th of August, 1860, he indorsed and delivered the above note, given him by Newman, to complainant Manning, as collateral security for a pre-existing demand of Manning against him, and for no other consideration whatever.

The mortgage given by Stevenson to Sandford in 1857, for the purchase-money for the land, was foreclosed, no part of it

having been paid, and the land bought in by Sandford for the debt, and an absolute title acquired by him some three years ago.

Defendant McClure, as trustee, has in his hands $860.52, (without any deductions for the costs, expenses, etc., of this suit,) which is subject to distribution among the creditors of defendant Newman; and there are many of them whose claims, amounting to twenty-five hundred dollars or more, are now in the hands of said McClure, in anticipation of the distribution of the aforesaid sum. If there is any liability by McClure to complainant in this case, complainant is to share his fellowship proportion on his demand against Stevenson, with the other creditors, in said trust fund. Each party to pay half of the costs of the Supreme Court in this case — decree to be reviewed at the January term, 1865, Supreme Court, Second Grand Division.

It is agreed that the following letter of complainant to defendant Newman and to John Mathers, a member of said land company and successor to Newman in the office of commissioner, shall be taken with the foregoing, and have such effect as it is entitled to as evidence:

"SPRINGFIELD, March 13, 1861.

"MR. JOHN MATHERS AND B. NEWMAN:

I hold a note as collateral security, given me by Rev. Wm. Stevenson, which note is signed by B. Newman, Commissioner, dated August the 14, 1857, calling for $2,111.20. Now if you will pay the note that Dr. Retter holds on me for $1,000, and the interest that has accrued thereon, and get Wm. Stevenson's consent in writing for to give up the note, I will postpone a suit at law at the March term of the Circuit Court in Morgan county, and give up my lien on B. Newman and company note above described.

G. S. MANNING."

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This case comes before us upon an agreed state of facts, which is set forth in the statement of the Reporter. The only question of any difficulty presented by it, is one which has led to very considerable controversy in American jurisprudence, and is now to be decided by this court for the first time. That question is, Is the indorsee of a negotiable note, who has taken it, before its maturity, as collateral security for a pre-existing debt, to be regarded as having taken it upon a valuable consideration, and as holding it discharged of any latent equities existing between the maker and the payee? The fact that the various courts of this country are so arrayed against each other upon this question, is the best possible evidence of its intrinsic difficulty.

We do not propose to review the numerous decisions. To do so would be but an unsatisfactory labor, because they are wholly irreconcilable, and it is therefore impossible to extract from them a general or guiding principle. We allude to some of them, for the purpose of showing to which side the tribunals of last resort, in many of our sister States, have given their authority.

The case of *Bay* v. *Coddington* is a leading one upon this subject, and was perhaps the first in which it received an elaborate discussion. It first came before Chancellor KENT, 5 J. C. R. 54, and was thence taken to the Court of Errors, the decision of which is reported in 20 Johns. 637. It was in the last named court that this question was chiefly discussed, and there was great diversity of opinion. There were other points in the case which helped to control the decision, but it has generally been quoted, and properly, as authority for the position that an indorsee who takes the note as either payment or security for a pre-existing debt, takes it subject to existing equities. The question afterwards came before the courts of that State, in *Roosa* v. *Brotherson,* 10 Wend. 85; *Ontario Bank* v. *Worthington,* 12 Wend. 593; *Payne* v. *Cutler,* 13 Wend. 605; *Bank of Salina* v. *Babcock,* 21 Wend. 499, and *Bank of Sandusky* v.

*Scoville,* 24 Wend. 115. The last two cases are quoted by Mr. Justice STORY, in the well known case of *Swift* v. *Tyson,* 16 Pet. 1, as shaking, if not overthrowing, the authority of the previous decisions, which had followed the principle considered as established in *Bay* v. *Coddington.* However, in the more modern case of *Stalker* v. *McDonald,* 6 Hill, 93, Chancellor WAL-WORTH, after alluding to the remark of Mr. Justice STORY, very elaborately reviews all the decisions, and draws the conclusion that, in the courts of that State, the question is firmly settled against the indorsee, and he denies that this position has ever been shaken. In that State, moreover, the cases go to the length of holding that the indorsee who has received the note in payment of a pre-existing debt, occupies no better position than he who has received it as collateral security, on the ground that if the note prove worthless, on account of latent equities, it is no payment, and the indorsee may recover his original debt.

The case of *Swift* v. *Tyson,* 16 Pet. 1, already referred to, is a leading case upon the other side. The note, in that case, was taken as payment of a pre-existing debt, and not merely as collateral security, and therefore what was said, in the opinion, in regard to the particular point before us, can only be claimed as *dicta.* At the same time, the attention of the court was challenged to this point by the separate opinion of Mr. Justice CATRON, and therefore the language of Mr. Justice STORY cannot be considered as inadvertently used, and may be regarded as receiving the implied assent of the court, with the exception of the judge already named.

The case came before the court from the district of New York. The decisions in that State were reviewed, but the question being one of general commercial law, the court held these decisions not to be obligatory, and proceeded to consider the case by reference to the recognized principles which control the rights of parties to negotiable paper. On a question of this kind, the opinion of so eminent a commercial lawyer as Mr. Justice STORY, speaking as the organ of so illustrious a tribunal, carries deserved weight, even though the precise point as

to which the opinion is uttered be not presented by the record. The case was argued at the bar by very able counsel, and very fully considered by the court. The authorities, both of this country and of England, were reviewed, and the opinion of the court very positively given as follows: "We have no hesitation in saying, that a pre-existing debt does constitute a valuable consideration, in the sense of the general rule already stated, as applicable to negotiable instruments." And farther on, the court remark: "We are prepared to say that receiving it" (a negotiable note) "in payment of, or as security for, a pre-existing debt, is according to the known and usual course of trade and business." In the later editions of his Commentaries, Chancellor KENT, in a foot-note, speaks of this opinion as laying down a better rule than the New York cases. He may, however, have alluded to the case in its bearing upon the question of a note received in payment, instead of collateral security. The doctrine laid down in *Swift* v. *Tyson* is also recognized in *McCarty* v. *Roots*, 21 How. 432, and we believe is generally conceded to be the settled rule of the Supreme Court of the United States.

That the indorsee of a negotiable note, who has taken it merely as collateral security for a precedent debt, takes it discharged of latent equities between antecedent parties, is held in the following cases: *Chicopee Bank* v. *Chapin*, 8 Met. 40 ; *Blanchard* v. *Stevens*, 3 Cush. 162 ; *Gardner* v. *Gager*, 1 Allen, 502 ; *Gibson* v. *Conner*, 3 Georgia, 47 ; *Bank of Republic* v. *Carrington*, 5 R. I. 523 ; *Bank of Charleston* v. *Chambers & Frost*, Rich. S. C. Rep. 657. There is also a *dictum* to the same effect in *Payne* v. *Bensley*, 8 Cal., and the cases of *Valette* v. *Mason*, 1 Cart. 288, and *Savings Bank* v. *Bates*, 8 Conn. 507, look in the same direction.

The opposite doctrine is held in the following cases, besides those in the State of New York already quoted: *Goodman* v. *Simonds*, 19 Missouri, 106 ; *Petrie* v. *Clark*, 11 Serg. & R. 377 ; *Williams* v. *Little*, 11 N. H. 66 ; *Fenonille* v. *Hamilton*, 35 Ala. 319 ; *Borland* v. *Barkman*, 8 Eng. Ark. 150 ; *Roxborough* v. *Messich*, 6 Ohio State Rep. 448 ; *Cook* v. *Helms*, 5 Wis. 107 ;

*Nichol* v. *Bate*, 10 Yerg. 429; *Prentice* v. *Zane*, 2 Gratt. 262; and *Brooks* v. *Whitson*, 7 S. & M. 513. There are also other cases to the same effect.

This precise question has not been much discussed in the English courts. Mr. Justice STORY, in *Swift* v. *Tyson*, reviews their decisions up to that date, and draws from them a conclusion in consonance with his own opinion. On the contrary, Chancellor WALWORTH, in *Stalker* v. *McDonald*, above quoted, attempts to show, that this conclusion is not sustained by the cases cited, and that the question cannot be considered as decided in England. He admits, however, that Baron PARKE, in *Percival* v. *Frampton*, 2 Cromp. M. & R. 180, expresses an opinion in accordance with the dictum in *Swift* v. *Tyson*. The same opinion has since been announced by Lord CAMPBELL, in *Poiter* v. *Morris*, 2 Ellis & B. 89. But little is said, and that is *obiter*, yet the point is treated, by his lordship, as a clear one.

In the presence of such conflict of opinions, it is idle to attempt to treat this question as one of authority. The counsel for the defendant admitted this, and argued the case very ably upon the ground of principle. We must consider it in this light, and adopt the rule which seems to us most reasonable in itself, and most consistent with commercial usage.

It is admitted, in all the cases, that if the indorsee, at the time of taking the note as collateral security for a pre-existing debt, gives a new consideration, as, for example, if he makes a valid agreement to give further time, he then takes it free from latent equities. But it is urged that in the absence of any such new consideration, or any such agreement, the indorsee is in no worse condition than he would have been if he had not received the note, even though the maker is permitted to set up any defense that he could have made against the payee. This is the chief argument of those authorities which decide against the claim of the indorsee. But is this true, as a matter of fact? Does not this assumption substantially beg the whole question? If the indorsee expressly give further time on his original debt, it is admitted he is to be protected. But it is assumed that, if he does not expressly *agree* to give time, he

does not *in fact* give it — he does not forbear to use remedies that he would have used but for the security. Now, the question is one of presumption, and that presumption must be drawn from the general experience of society. The question is, in the absence of any express agreement, what we must presume to have been the implied understanding of the parties, at the time of the indorsement, in regard to further forbearance, to be inferred from the nature of the transaction, and the objects which both parties had in view. We have no hesitation in saying, that the assumption that time is not in fact given, because it is not expressly agreed to be given, and that therefore the indorsee is not placed in a worse position by letting in the latent equities than he would have occupied if he had not received the note, is at variance with the general experience of all men whose business makes them cognizant of affairs of this character. What inducement has the debtor to part with his negotiable paper except the expectation of further forbearance? Would he think of parting with it, if he expected his creditor would immediately bring suit against him, notwithstanding the indorsement? When the creditor seeks his delinquent debtor, is not his language, in substance, "I must bring suit unless you secure me"? And when the debtor has turned out his collaterals, without taking an express agreement to forbear, does not good faith, nevertheless, require forbearance, and is it not generally given among all right-minded men? Having received the securities, the creditor believes himself safe. He is lulled into quiet, and neglects to take such steps to procure the payment of his debt as prudence would have required but for the fancied securities in his hands. He is certainly an innocent party in this transaction, and if the maker of the note has a good defense as between himself and the payee, yet which should suffer the loss as between himself and the innocent indorsee? Do we need to do more than apply the familiar principle that, as between two innocent parties, he must suffer who has done an act by which he has placed it in the power of a third person to defraud the other party?

It is said that the indorsee is to be regarded rather as the

agent of the payee to collect the note, and apply the proceeds on the pre-existent debt, than as an indorsee for a valuable consideration.    The incorrectness of this view is at once shown by considering that, after the indorsement, the payee loses his title to the note, and has no power to withdraw it.    The valuable consideration is the pre-existent debt, an adjunct of which the note becomes by the indorsement, as completely as if it had been indorsed at the time such debt was created.

It is said that the position of the indorsee, in cases of this kind, is not different from that of a general assignee for the benefit of creditors.    What we have already said, shows wherein, in our opinion, the difference consists.    In the case of a general assignment, there is no ground for presuming forbearance as one of the objects, or any implied agreement to forbear on the part of the creditors.    Indeed, these general assignments are ordinarily made without the wish or knowledge of the creditors, and where the object is not fraud, it is generally to secure an equal distribution of the assets. The assignee is a mere trustee, to collect what may be due the assignor, for the benefit of his creditors.

We have stated why, in our opinion, the equity is with the indorsee, to wit, that by the almost universal usage of the world of commerce, a transaction of this sort is understood by the parties to imply further forbearance on the pre-existing debt, and thus the indorsee is lulled into a false security by means of an instrument which the person sought to be held liable has made and put in circulation.

We have only to add, that the line of decisions which we follow contributes to that stability in negotiable paper which is so important a consideration in a mercantile community. To accomplish this has been the constant tendency of judicial dicisions from the time of Chief Justice HOLT to the present day.    The value of this stability to commerce is acknowledged by all courts, and by all writers upon mercantile law.    It is easy to see how much it strengthens credit and facilitates the multitudinous transactions of a commercial people.

We are led, then, by what we consider the equities between

the parties, and by the acknowledged policy of giving stability to negotiable paper, to hold that the indorsee of such paper, before its maturity, taking it as payment or security for a pre-existing debt, and without any express agreement, shall be deemed a holder for a valuable consideration, in the ordinary course of trade, and shall hold it free from latent defenses on the part of the maker.

It is urged that Manning, the complainant in this case, has a remedy against the members of the land company, and should be required to pursue that remedy, as the individual debts of Newman will more than absorb his property. The members of that company, however, are not before us, nor can we tell from this record whether Manning would have an equitable claim against them or not. The articles of association are not given, nor the power under which Newman purchased lands.

A point is made in the brief of counsel that this note was fraudulently put in circulation. That, however, is not sustained by the agreed case.

We should perhaps state, that in considering the main question in this record we have not overlooked the case of the *Metropolitan Bank* v. *Godfrey*, 23 Ill. 606. One of the positions taken in the main opinion in that case was, that the bank was not a purchaser for a valuable consideration, because it received the conveyance only in payment of a precedent debt. We do not desire to be understood as overruling that position, but if that question comes again before us, it will be open to argument, whether a different principle should be applied to conveyances of real estate from that which all the members of the court agree should be applied to the indorsement of a promissory note.

The case of *Russell* v. *Hadduck*, decided in this court, 3 Gilm. 233, sustains, so far as it goes, the rule we have adopted. The question raised, it is true, was not as to the effect of the indorsement of a note as collateral security for a precedent debt, but in payment thereof, and perhaps the decision was more especially placed upon other grounds. The court, however, refer disapprovingly to the New York rule, and say that a note

indorsed in payment of a pre-existing debt, is held by the indorsee discharged of latent equities.

*Decree reversed, and cause remanded.*