Elijah H. Gammon et al.

v.

Benjamin Huse.

1. PARTNERSHIP—FIRM NOTE GIVEN TO PARTNER.—There is no legal impediment to one of several partners becoming the creditor of the firm, and taking a promissory note in the name of the firm as evidence of his debt. In such case the payee cannot sue at law upon the note, but he has a complete remedy in equity.

2. BONA FIDE INDORSEE OF SUCH NOTE.—Such a note in the hands of a *bona fide* indorsee, for value, before maturity, is within the rule of protection accorded to commercial paper, and constitutes a valid obligation.

3. INDORSEMENT OF NOTE AS COLLATERAL SECURITY—RIGHTS OF HOLDER.—The rule of full protection to the *bona fide* holder of commercial paper, is modified in its application to paper transferred as collateral security. In such cases, if, as between the original parties, there is a defense on the merits, the transferee is protected only to the extent of the amount of the debt secured.

4. DEFENSES AS BETWEEN ORIGINAL PARTIES MAY BE SHOWN.—The holder of a note indorsed as collateral security not being protected except as to the amount of the debt secured, it follows that in a suit upon the note, evidence tending to show that the maker is not liable to the payee upon the note, is admissible.

5. BURDEN OF PROOF AS TO AMOUNT OF DEBT SECURED.—In an action upon a note by a party who has received the same as collateral security for a debt, the current of authorities is in favor of the rule requiring the maker, when sued, to show the amount of the debt secured.

6. PARTY NOT REQUIRED TO DO A USELESS ACT.—Where the maker of

Gammon v. Huse.

a note, when sued upon it by one who holds it as security for money advanced, offers proof tending to show a defense as between himself and the payee, which evidence the court refuses to admit, he need not then make an offer to prove that the note was transferred as collateral security, or the amount of money advanced. Such evidence, if admitted, would not avail him in the absence of the refused testimony, and he is not required to do a useless act.

7. PRACTICE—OBJECTIONS TO TESTIMONY.—When in the trial of a cause evidence is offered which is competent for any purpose, and it is only objected to generally, it is error to exclude it. ·

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed January 4, 1882.

This was an action of assumpsit, brought by Benjamin Huse against Elijah H. Gammon, appellant, and F. K. Orvis, Obadiah Huse and Josiah N. Cutler, composing the firm of F. K. Orvis & Co., upon a promissory note for $5,000, dated April 1, 1871, payable to the order of Obadiah Huse, May 1, 1872, with interest at 10 per cent. per annum, and by the payee indorsed before maturity to the plaintiff. The note was made, and the firm name signed by F. K. Orvis, who was the managing partner, and the payee, Obadiah Huse, was a member of the firm at the time the note was made. By the co-partnership articles, Orvis was not to make any contracts, nor to give the note of the firm without the consent of Gammon. The consideration of the note was moneys advanced to the firm by Obadiah Huse.

It was testified by Obadiah Huse that he indorsed the note in blank a few days after it was made, and sent it to appellee the latter part of January, 1872, by mail, as collateral security for an indebtedness, partly of his own and partly of Cutler and Huse, and also as security for advances to be thereafter made to him by appellee; but the amount of the indebtedness and advances was not shown. He further testified that the note was thus transformed with the knowledge and approbation of Gammon. This is denied by Gammon, who says he had no knowledge of the existence of the note until 1878, about six years after its maturity. The partnership was entered into September 1, 1869, and was dissolved May 31, 1871, after the making of the note.

On the trial appellant, who alone defended, offered in evidence the following agreements between himself and Obadiah Huse, the execution of which was duly proven:

"Chicago, Feb'y 27th, 1869.

"For and in consideration of the refusal of all the interest that E. H. Gammon has in the firm of F. K. Orvis & Co., for $500, and one dollar in hand paid, I hereby agree to assume all the indebtedness of the said firm, both past and future, and indemnify the said E. H. Gammon from all losses, and against paying any liabilities of the said firm, that they may have been contracted or may be in the future.

"O. Huse."

"This agreement, made and entered into this 4th day of April, 1870, between E. H. Gammon, of Chicago, State of Illinois, and Obadiah Huse, of the county of Cook and State of Illinois.

"Witnesseth: That the said E. H. Gammon, in consideration of one dollar to him in hand paid by the said Obadiah Huse, the receipt whereof is hereby acknowledged, and other considerations named below, has granted, bargained and sold, and by these presents does grant, bargain and sell unto the said Obadiah Huse, all of his interest in the firm of F. K. Orvis and Co., including stock in trade, tools, fixtures, machinery, all indebtedness to said firm, whether in accounts or notes, the true intent and meaning being to include all the assets of the said firm whatsoever, and the said Obadiah Huse, in consideration of the above, hereby agrees for himself, his heirs, his administrators and his assigns, to pay all the indebtedness of the said firm of F. K. Orvis & Co., for which the said E. H. Gammon is, or may be lawfully holden, whether such indebtedness may have been contracted in the past, or may be contracted in the future, and protect the said E. H Gammon harmless from all and every claim against the said firm, or that may ever be against the said firm, as much as if the said E. H. Gammon had never been a member thereof.

"In witness whereof, we hereby set our hands, the day and year above named.

"E. H. Gammon,
"Obadiah Huse."

These agreements the court, upon the objection of the plaintiff, refused to admit in evidence, and the defendant excepted. There was a verdict and judgment for the plaintiff for $8,800, and appellant brings the case here for review.

Messrs. ELLIS & MEEK, and Mr. O. H. HORTON, for appellant; that the sale by one co-partner of his entire interest in the co-partnership is a dissolution of the firm, cited 1 Lindley on Partnership, 231; Parsons on Partnership, 415; 1 Collyer on Partnership, 115; Story on Partnership, § 272; Edens v. Williams, 36 Ill. 252.

A note made by a firm payable to one of the partners is a nullity: Bogue v. Mellick, 25 Ill. 91; Wilder v. DeWolf, 24 Ill. 190; Hall v. Burton, 29 Ill. 321; Mainwearing v. Newmann, 2 Bos. & Pul. 120; Hareston v. Mitchell, 8 Yerg. 111.

The partnership having been dissolved, the payee of the note could not by indorsement and delivery of the note to appellee, incur a new liability for the firm: Parsons on Partnership, 404; Darling v. March, 22 Me. 184; Lumberman's Bank v. Pratt, 51 Me. 563.

, Appellee holding the note as collateral, could only recover the amount of his debt: Byles on Bills, 77; Chitty on Bills, 55.

Where a note is made in fraud of a defendant, the plaintiff must show that he is a *bona fide* holder for value: Byles on Bills, 77; 1 Parsons on Bills, 188; Harvey v. Towers, 6 Exch. 656; Aldrich v. Warren, 16 Me. 465; Perrin v. Noyes, 39 Me. 384; Munroe v. Cooper, 5 Pick. 412; Holme v. Kaspar, 5 Binn. 469; Allan v. Henshaw, 21 N. J. 665; Allair v. Hartshorn, 21 N. Y. 665; Vallett v. Mason, Smith, 89; Moore v. Ryder, 65 N. Y. 444; Williams v. Smith, 2 Hill, 301; Stocker v. McDonald, 6 Hill, 96; Cardwell v. Hicks, 37 Barb. 464; Holcomb v. Wykoff, 35 N. Y. 35; Bigelow on Bills, 505; Stodart v. Kimball, 6 Cush. 470; Jones v. Hibbert, 2 Starkie, 270; Wippen v. Roberts, 1 Esp. 261; Fisher v. Fisher, 98 Mass. 304; Chicopee Bank v. Chapin, 8 Met. 40; Sedgwick on Damages, *238.

And the burden of proof is upon the plaintiff to show for what amount he holds the note: Holme v. Kasper, 5 Binn. 469; 1 Parsons on Bills, 188; Edwards on Bills, *319; Byles

on Bills, *120; Harvey v. Towers, 6 Exch. 656; Comstock v. Hier, 73 N. Y. 273; Maitland v. Citizen's Bank, 40 Md. 540; Roberts v. Lane, 64 Me. 111; Hall v. Featherstone, 3 Hurl. and N. 284; 2 Greenleaf's Ev. §172; 2 Parsons on Bills, 483.

Messrs. ROBINSON & GREEN, for appellee; that a firm may give its note to one of its members, and bind the firm, cited Kipp v. McChesney, 66 Ill. 460; Smith v. Lusher, 5 Cow. 688; Pitcher v. Barrows, 17 Pick. 361.

An indorsee holding a note before maturity for a pre-existing debt, or to secure future advances, is a *bona fide* holder: Manning v. McClure, 36 Ill. 490; Worcester Nat. Bank v. Cheney, 87 Ill. 602.

. The title of an endorsee before maturity for valuable considerations, can only be defeated by bad faith on his part, and the burden of proving this lies on him who assails the title: Comstock v. Hannah, 76 Ill. 530; Shreeves v. Allen, 79 Ill. 553; Murray v. Lardner, 2 Wall. 110.

A partnership continues as to persons dealing with it, until they receive actual notice of the dissolution: Parkin v. Carruthers, 3 Esp. 248; Southern v. Grim, 67 Ill. 106; Ellis v. Bronson, 40 Ill. 455.

Private arrangements between partners do not affect parties without notice: Winship v. Bank of U. S. 5 Pet. 529; Whitaker v. Brown, 16 Wend. 504.

It is not error to refuse to admit evidence which does not tend to show a defense under the pleadings, but which may have been proper in mitigation of damages, unless the record shows it was offered for that purpose: Byler v. Asher, 47 Ill. 101; Travis v. Barger, 24 Barb. 413; Crenshaw v. Davenport, 6 Ala. 390.

Appellee being a *bona fide* holder of the note, the presumption is that he gave full value for it, and the burden is not upon him to show for how much he held the note: Daniel on Neg. Inst. § 812; Duncan v. Gilbert, 29 N. J. 521.

WILSON, P. J.   The position of appellant's counsel, that a promissory note made by a partnership firm, payable to one of its co-partners, is without validity, and creates no right or lia

bility while in the hands of the payee, is unsound. Such a note, if founded on a sufficient consideration, creates a valid obligation, not less than if it were payable to a third person, the only difference being in the nature of the remedy, in default of payment. The payee cannot sue upon such a note in an action at law, as to do so he would have to sue himself, but he has a complete remedy in a court of chancery. This subject was fully considered by the Supreme Court of New York in Smith v. Lusher, 5 Cow. 688, where it was held that there is no legal impediment to one of several partners becoming the creditor of the firm, and taking a promissory note in the name of the firm, as evidence of his debt. And to the same effect is Kipp v. McChesney, decided by our own Supreme Court, 66 Ill. 460. And so are the authorities uniformly.

But if it were otherwise, and such an instrument were of no binding force as between the original parties, it by no means follows that as against a *bona fide* indorsee for value, before maturity, it would be invalid. On the contrary, in the hands of such a holder, the note would constitute a valid obligation, and the rule of protection to commercial paper would apply.

Did the court err in refusing to admit in evidence the agreements offered by the defendant? The proof shows that the note was indorsed by Obadiah Huse, the payee, before maturity, to appellee, as collateral security for moneys advanced, or agreed to be advanced by the latter to Obadiah Huse, or to the firm of Cutler & Huse, of which Obadiah was a member. To the extent of the moneys paid or advanced on the pledge of the note, Benjamin Huse occupied the position of a *bona fide* holder of the paper, and was entitled to the protection of a *purchaser* of commercial paper, in the usual course of business. But the rule affording full protection to the holder of that class of paper, is modified in its application to paper transferred as collateral security. In such cases if, as between the original parties, there is a defense on the merits, the transferee is protected only to the extent of the amount of the debt secured. Daniel, in his valuable work on Negotiable Instruments, says, "When it appears that the bill or note was accepted by the holder as collateral security for a debt, and he is

deemed entitled to recover upon it, he is still limited to the amount of the debt which it secures, if there be a valid defense against his transferrer, being regarded at all events as a *bona fide* holder, and entitled to stand upon a better footing, only *pro tanto.*" Daniel on Neg. Inst. Vol. 1, § 832; see, also, Williams v. Smith, 2 Hill, 301; Stoddard v. Kimball, 6 Cush. 469; Allaire v. Hartshorne, 21 N. J. L. R. 665; Fisher v. Fisher, 98 Mass. 303; Duncan, Sherman & Co. v. Gillette, 29 N. J. L. 527; Manning v. McClure, 36 Ill. 490; Worcester Nat. Bank v. Cheney, 87 Ill. 602. And this doctrine applies to the case of a holder of accommodation paper transferred as collateral.

In Allaire v. Hartshorne, 21 N. J. 665, Chief Justice Greene said : "The question presented is simply this: in an action by a *bona fide* holder of a promissory note, who received it as collateral security, for a less sum than the amount due upon the note, the note being invalid as between the parties, can the holder recover more than the amount which he has advanced, or for which the note is held as security? I speak not now of the rights of a *bona fide* purchaser of a note. * * * As between the original parties, Allaire and Pettis, the note is worth less. It was given to Pettis for a specific purpose, and by him misappropriated. If the suit were in his name no recovery could be had; Hartshorne as a *bona fide* holder may recover the amount due him on the note; but shall he have judgment for the surplus beyond his claim? If he do, then by the judgment of this court, Allaire is compelled to pay money, which it is conceded he is not bound in law to pay, and which is due to no one." And this case is in harmony with the authorities everywhere.

It was therefore material on the trial to ascertain the rights and liabilities of the original parties to the note; for if, as between them, appellant was liable to pay the note, it was wholly immaterial to him whether judgment should go against him in favor of appellee, or of any other lawful holder, as the judgment would be a bar to a second suit; while on the other hand if the note in the hands of the payee was invalid, and judgment went against appellant for the whole amount,

and that was greater than the amount for which it was pledged, he would, as to the surplus, be compelled to pay money that was due to no one—not to Obadiah Huse, for as to him the note was invalid; not to Benjamin Huse, for he had no claim beyond the amount of money actually advanced by him on the security of the note.

For our present purpose, it is not necessary to determine on which party rested the burden of proving what amount of payments or advances appellee had made. According to some of the earlier English cases, the burden of proof was shifted, and the indorsee of commercial paper was put to proof of the consideration paid by him, whenever it was shown that, as between the original parties, the paper was invalid or without consideration. Heath v. Sampson, 2 Bar. & Ad. 291. And the same rule has been held in some of the American courts, where the indorsee has taken the paper as collateral security. Maitland v. Citizen's Bk. 40 Md. 540, and cases cited. But the doctrine of the earlier English cases was subsequently overturned, and it may now be considered as settled both in England and this country, at least as to the *purchaser* of commercial paper, before maturity for value, that unless the defendant can show that the note or bill was originally obtained by fraud or duress, or has been fraudulently obtained from an intermediate holder, or has been lost or stolen, or in some way been the subject of fraud or felony, the burden of proof will not be cast upon the holder to show the amount of consideration paid by him. Parsons on Bills and Notes, 188, and notes. And the current of the authorities seems to be in favor of applying the same rule to the holder of paper transferred as collateral security, for advances of money, and requires the maker of the paper to show the amount of such advances; though, in the absence of any adjudications on the subject, we should deem it more just and reasonable that such proof should be required of the holder who has made the advances.

Assuming that the burden of proof was on Gammon to show the amount of the advances made by appellee, his defense consisted of two branches: it was necessary for him to show that as between him and the payee of the note, there

was no liability; and secondly, that the note was transferred as collateral security, and the amount of advances made by appellee.

Proof of one branch would be unavailing, without proof of the other. Proof of the invalidity of the note, as between him and Obadiah Huse, was therefore indispensable to his defense. That the agreements offered in evidence and rejected by the court, constituted a defense to the note in the hands of Obadiah Huse, is manifest. The second of these agreements was to the effect that Huse, in consideration of the sale to him by Gammon of all the latter's interest in the business and assets of the firm of F. K. Orvis & Co., agreed to assume and pay all the indebtedness of the firm for which Gammon was or might become holder, whether such indebtedness had been contracted in the past or might be thereafter contracted, and to protect and save Gammon harmless from all and every claim against the firm, or that might ever be against the firm, "as much as if the said E. H. Gammon had never been a member thereof." The note in suit was an indebtedness of the firm, contracted after the making of this agreement. Obadiah Huse was the person to whom the debt was payable, and it would be absurd to say he could maintain a suit against Gammon on a cause of action of which he had expressly covenanted to assume the payment, and to protect Gammon against all liability upon.

The order in which his proof was offered is not material. It was enough that it was competent evidence in the case. Nor was it necessary when rejected by the court, it should have been followed by an offer to prove that the amount of the advances was less than the amount of the note. The agreements which would have shown a defense to the note in the hands of the payee having been ruled out, it would have availed Gammon nothing to have shown either that the note was transferred as collateral security, or the amount of the advances. Such evidence, if offered and admitted, would not have helped him, and he was not required to do a useless act. Mayo v. Moore, 28 Ill. 428.

It is urged by appellee that the agreements were not of-

fered in mitigation of damages, and that under the issues they were not admissible as a defense to the cause of action. The declaration was upon the note; the pleas non-assumpsit non-joined liability, a denial of co-partnership, and denial of the making of the note. The record shows that the agreements were offered generally, and the objection to their admission was general. When in the trial of a cause, evidence is offered, which is competent for any purpose, and it is only objected to generally, it is error to exclude it. The evidence furnished by the agreements being a part, and a necessary part of the proof going to make out a defense, was admissible under the general issue. Whether the evidence offered in a case is or not sufficient to defeat the plaintiff's entire demand, is not the test of its admissibility under a plea, which goes to the whole cause of action. The plea of the general issue, in an action of assumpsit on a promissory note, is a plea to the entire cause of action, and yet no one would contend, that proof of part payment of the note is not admissible under that plea, although the effect of such proof is only to mitigate the damages. We think the evidence was clearly admissible under the issues.

For the error of the court in excluding the agreements as evidence, the judgment of the court below is reversed and the cause remanded for a new trial.

Reversed and remanded.