Jackson *et al. v.* The City National Bank of Goshen.

## No. 14,476.

JACKSON ET AL. *v.* THE CITY NATIONAL BANK OF GOSHEN.

GAMING.—*Loan of Money to be Used in Purchase of Options.*—*Lender's Knowledge.*— *When Recovery will not be Defeated.*—Mere knowledge on the part of a person loaning money that the borrower intends to use it by engaging in the purchase of options on grain in the market of another State, or investing in wagering or gambling contracts, will not defeat a recovery. In order to defeat a recovery it must appear that the person loaning the money did something more than loan the money in furtherance of the deal, or in aid of the illegal transaction.

PROMISSORY NOTE.—*Action Upon.*—*Pleading.*— *Answer Alleging Want of Consideration.*—*Sufficiency of Reply.*—To an answer alleging want of consideration, a reply which alleges that the first note was given for money loaned, and that the note in suit was given in renewal, is sufficient.

From the Elkhart Circuit Court.

*H. C. Dodge,* for appellants.

*J. H. Baker* and *F. E. Baker,* for appellee.

OLDS, J.—The appellee sued the appellants upon a promissory note, dated May 6th, 1887, due on June 23d, 1887, for fifteen hundred dollars, with eight per cent. interest, and payable at the City National Bank of Goshen, Indiana.

The appellant Amos C. Jackson filed a separate answer in one paragraph, in substance, as follows: He admitted the execution of the note to the City National Bank, as alleged in the complaint, but averred that on November 7th, 1887, he borrowed the money represented by said note of and from the said plaintiff, and executed his note therefor, with his co-defendant as surety, due in ninety days from said date. Hitherto, until the date of the execution of the note mentioned in the complaint, every ninety days, at the request of the plaintiff, he executed a new note, his co-defendant signing as surety with him for said debt in renewal of said original note, and took up the note next theretofore executed, and he avers that the indebtedness represented by the note mentioned in the complaint is the identical indebted-

ness which he incurred to said plaintiff at the date first above mentioned, and no other, and the note mentioned in the complaint is a renewal of said original loan; that the consideration of said original note and the one mentioned in the complaint, was for money loaned by the plaintiff to the defendant, for the purpose, at the time of such loan, of being wagered by the defendant in purchasing options in wheat and other grain, pork and lard, and articles of produce, and in making contracts upon margins and gaming and wagering upon the future price of wheat, grain and produce, and making good and paying any losses that might and did occur to defendant in certain wagering, gambling, immoral and illegal contracts entered into by the defendant personally and by and for his agents for the purchase of certain margins on wheat and other grain, pork, lard and produce, and options in the same, with the understanding, agreement and intention by the defendant, and the parties with whom such illegal, immoral, gambling and wagering contracts were made that the said wheat and other grain, pork, lard and produce so illegally and immorally contracted for and purchased, were not to be delivered to or received by the defendant, but with the agreement and understanding between said defendant and said contracting parties that at a future day there was to be a settlement between them, when the defendant was to receive from said other contracting parties, or pay to said other contracting parties, the difference between the contract price and the market price of said wheat and other grain, pork and lard, in the city of Chicago, Illinois, on the day of the settlement; that the sole and only consideration of said original note was money loaned by the plaintiff to defendant at the time of the making of such wagering and illegal contracts by the defendant, and the sole and only consideration of the note sued upon and mentioned in the complaint is the renewal of said original note as aforesaid given as evidence of said money loaned, and that when said money was so loaned, the plaintiff loaned it to the

defendant for the purpose of being invested by defendant as aforesaid in gambling and wagering contracts so made by defendant as aforesaid, and which purpose, object and intention were then and there fully known by the plaintiff, and plaintiff was fully informed and told at the time said loan was so made by the defendant, that he wanted said money to invest in the city of Chicago in the making of illegal wagering and gambling contracts.

It is further averred that all of the money so loaned was invested by the defendant in such illegal wagering and gambling contracts, and such use of it was agreed to by the plaintiff, and the plaintiff knew that said money was so used, and knew at the time it was so loaned that it was intended to be so used. And it is further averred that the money was all lost to the defendant, and he received nothing of value for the same, or any part thereof.

It is further averred that his co-defendant, Ira Jackson, is only surety on the note sued upon, and was only surety on the original note and notes given in renewal thereof, and received no part of the money or any consideration.

The appellant Ira Jackson filed a separate answer in one paragraph, alleging suretyship and that the note was executed without consideration.

The appellee filed a separate demurrer to each of these paragraphs of answer, which was overruled and the appellee excepted and assigns such rulings as cross-errors.

The appellee then filed a reply in four paragraphs. The first paragraph is a general denial and addressed to the answer of each of the appellants. The second and third paragraphs are addressed to the separate answer of Amos C. Jackson, and the fourth paragraph is addressed to the separate answer of Ira Jackson.

The appellants severally demurred to the second, third and fourth paragraphs of the reply, which demurrer was overruled and exceptions reserved by the appellants.

It is proper to consider first the cross-errors assigned,

since if the answers are bad it is unnecessary to consider the ruling upon the demurrer to the reply. The force of the allegations in the separate answer of Amos C. Jackson is, that he borrowed the money of the appellee for the purpose of investing it in wagering and gambling contracts in the city of Chicago, Illinois, and that appellee was informed that he was borrowing the money for and intended to use it for that purpose, and that it loaned him the money to be used for the purpose of investing in such gambling contracts in the city of Chicago, Illinois. It is not alleged and does not appear that appellee had any interest in such wagering or gaming contracts, or that it took any part in the making of such illegal contracts, or that it in any way took part in furthering the deals to be made by the appellant Amos C. Jackson, except to loan him the money with the knowledge that he intended to use it in making illegal contracts generally with persons at the city of Chicago, Illinois. It presents the question as to whether or not a bank can recover upon a note taken for money loaned to a person having knowledge at the time of loaning the money that the borrower intended at the time to use the money in the purchase of options on grain and produce in another State, or investing in other like gaming contracts.

In speaking of transactions of this character, this court, in the case of *Sondheim* v. *Gilbert*, 117 Ind. 71, says : " But in the absence of a statute in direct terms prohibiting transactions of the character of that in question, and declaring them unlawful, or expressly declaring promissory notes growing out of such a transaction invalid, while the courts will on general common law principles declare such notes invalid between the parties and those who were accessory to the illegal act, yet in order to invalidate a note or other security in the hands of one who advanced money, which the borrower intended to and did employ in carrying on an illegal enterprise, it has been held that it was not enough to defeat a recovery that the lender knew the borrower's purpose.

He must have been in some way implicated as a confederate in the specific illegal design under contemplation. It must have been a part of the contract, or there must have been in some way such a combination of intention between the lender and borrower that the money furnished should be used in aid of and to promote the unlawful enterprise, as that the former became *particeps criminis.*"

In the case of *Bickel* v. *Sheets*, 24 Ind. 1, it was held that a contract for the sale of property intended to be used for the purpose of gaming, was not void under statutes then in force in this State, though the seller was informed at the time of sale of the purpose to which the property was to be applied. The same doctrine was held in the case of *Cummings* v. *Henry*, 10 Ind. 109.

These decisions of our own court are well supported by authority, although there is a line of decisions holding the opposite theory.

In *Webber* v. *Donnelly*, 33 Mich. 469, it is held that the vendor's knowledge, at the time of the sale, that the vendee intends to make illegal use of goods sold, will not prevent his recovering from the vendee the value of the property. In that case the court says : " The undoubted weight of authority, however, holds that mere knowledge by the vendor that the vendee, at the time of the purchase of property, intends to use it for an illegal purpose, will not prevent his recovering from the vendee the value of the property." *Tyler* v. *Carlisle*, 79 Maine, 210 (1 Am. St. Rep. 301, and authorities there cited); *Brunswick* v. *Valleau*, 50 Iowa, 120 (32 Am. Rep. 119); *Waugh* v. *Beck*, 114 Pa. St. 422 (60 Am. Rep. 354 ) ; *Sprague* v. *Rooney*, 82 Mo. 493 (52 Am. Rep. 383); *Wright* v. *Hughes*, 119 Ind. 324.

We think the decisions of this court are to the effect that mere knowledge on the part of a person loaning money that the borrower intends to use it by engaging in the purchase of options on grain in the market of another State, or investing in wagering or gambling contracts, will not defeat a

recovery. In order to defeat a recovery it must appear that the person loaning the money did something more than loan the money in furtherance of the deal, or in aid of the illegal transaction, and this doctrine is well supported by authorities.

It does not appear from the allegations in the answer of the appellant Amos C. Jackson that the appellee in this case did anything except to loan the said appellant the money, with the knowledge that he intended to use it by investing in options and in illegal contracts of some character, for the purchase of some kind of grain. The appellee did nothing to consummate such contracts, or to bring the parties to such proposed contract together for the purposes of contracting, nor toward transmitting the money or delivering the same to the party or parties with whom the appellant intended to contract. It is not even alleged that the appellant had any specific deal in mind at the time he borrowed the money, or person with whom he intended contracting.

It appears that the place where the appellant intended to invest and engage in such illegal business was in another State. There was nothing in the contract between the appellant and appellee that required the use of the money for any such unlawful purpose. The appellant had the perfect right to have changed his mind and retained the money when he received it, without violating in any way his contract with the appellee for the loan of the money.

We do not think the answer makes a good defence, and the court erred in overruling the demurrer thereto, and even if the reply to this paragraph was bad there was no error in overruling a demurrer to the same, for the reason that a bad reply to a bad answer is sufficient.

As to the questions arising upon the demurrer to the answer of appellant Ira Jackson, and the demurrer to the reply thereto, admitting that the answer of said appellant is sufficient as a plea of no consideration, which is questionable, as the answer appears to be framed upon the theory of

suretyship, yet the reply is clearly sufficient. It alleges that the first note was given for money loaned and that the present note was given in renewal.

There is no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

MITCHELL, J., took no part in the decision of this case. Filed Oct. 10, 1890.