Plank v. Jackson.

Judgment reversed.

**Filed June 9, 1891.**

---

No. 14,686.

PLANK v. JACKSON.

GAMING.—*Dealing in Options.*—*Loan of Money to be Used in.*—*Lender's Knowledge.*—*When Recovery will be Defeated.*—Where a person loans money, and, as a part of the arrangement, it is to be used in dealing in options or futures, and he is interested in such contracts or assists in bringing the parties together, and aids in consummating such contract, by conspiring with and urging and aiding the party to whom he loans the money to make such investment, and loans him the money to be so invested, he becomes *particeps criminis*, and the law will not aid him to collect the money which he parted with under such circumstances.

SAME.—*Instruction.*—An instruction that the mere knowledge on the part of the lender that the borrower intends to use the money to pay a debt which the borrower is under no legal obligation to pay by reason of its growing out of a gambling or unlawful contract, makes a note given for such money so loaned void, is erroneous.

SAME.—*Section 4950, R. S. 1881, Construed.*—Section 4950, R. S. 1881, was enacted to prevent the borrowing of money to be at the time wagered, and does not include cases where money is borrowed with an intention on the part of the borrower to invest it in some speculative transaction at some time in the future, or to pay losses theretofore sustained.

PRACTICE.—*Instruction.*—*Bill of Exceptions.*—Section 533, R. S. 1881, clause 6, relating to making the instructions a part of the record by order of court without a bill of exceptions, does not take from a party the right to bring the instructions into the record by bill of exceptions.

From the Elkhart Circuit Court.

*J. D. Osborne* and *A. S. Zook*, for appellant.

*J. H. Baker* and *F. E. Baker*, for appellee.

OLDS, C. J.—This is an action by the appellant against the appellee on several promissory notes executed by the appellee to the appellant.

The complaint is in several paragraphs, each counting on a promissory note. The appellee answered in three paragraphs. The first, payment, the second, want of consideration, and the third that the notes were given for money borrowed to be used by the appellant and appellee, jointly and individually, in gambling contracts, investing in margins on grain, and to make good and pay losses sustained by them jointly and individually, stating fully that the notes were given for money to be used, and which was used, by them, jointly and severally, by investing in gambling and unlawful contracts, and in paying losses sustained on account of such contracts.

This third paragraph of answer was demurred to by appellant, the demurrer was overruled, exceptions were reserved, and the ruling assigned as error.

It is contended by counsel for appellant that this ruling was erroneous for the reason that the answer only shows that the money was borrowed with the knowledge of the appellant that the money was to be used, or intended to be used, in gaming contracts, by investing in options on grain, in which contracts appellant had no interest, and that a mere knowledge on the part of the appellant that such was the purpose of the appellee was not sufficient to defeat the collection of the note.

If the answer justified the construction the appellant places upon it, then it would be defective, for, as held in the case of *Jackson* v. *City Nat'l Bank,* 125 Ind. 347, mere knowledge on the part of the lender that the borrower intended to use it by investing in such contracts, is not sufficient to defeat a recovery on the note, though the borrower did intend, at the time of receiving the money, to use it in such unlawful purpose; he was at liberty to change his mind, and the lender has no control over the money after he parts

with it and receives the note for its payment. But in this case the answer will not bear such a construction. It charges directly, and repeats the charge in various forms, that the appellant was interested in the gambling contracts.

It is further contended by counsel that options or futures on grain are not a wager, as the word is used in common acceptance, and that as the deals were to be made outside of this State, in the city of Chicago, to make a good answer it must allege and set up a statute of the State of Illinois making such deals unlawful.

We are cited by counsel to the case of *Sondheim* v. *Gilbert*, 117 Ind. 71, but in that case there is the following statement of the law in relation to contracts of this character:

" While contracts for the sale of property to be delivered in the future are valid, where the parties, or either one of them, actually contemplate a delivery of the subject-matter of the contract, yet if, under the guise of a contract which has the appearance of validity upon its face, the real intention is merely to speculate on the rise or fall of the market, without any purpose that any property shall be delivered or received, but with the understanding that at the appointed time the account is to be adjusted by paying or receiving the difference between the contract and the current price, then the whole transaction is illegal, as against public policy, and falls under the condemnation of the law."

In the case of *Whitesides* v. *Hunt*, 97 Ind. 191, the court says: " In the case of *Rumsey* v. *Berry*, 65 Me. 570, the court very clearly defines the line which separates the two classes of contracts, the legal from the illegal. In that case, it was said : 'A contract for the sale and purchase of wheat to be delivered in good faith at a future time is one thing, and is not inconsistent with the law. But such a contract entered into without an intention of having any wheat pass from one party to the other, but with an understanding that at the appointed time the purchaser is merely to receive or pay the difference between the contract and the market-

price, is another thing, and such as the law will not sustain. This is what is called a settling of the differences, and as such is clearly and only a betting upon the price of wheat, against public policy, and not only void, but deserving of the severest censure.' "

These decisions of our own court are in harmony with and but state the law as held by the Supreme Court of the United States in the case of *Irwin* v. *Williar*, 110 U. S. 499. We think the words "dealing in options, futures or margins" are well understood to mean a mere speculative contract, in which the parties speculate in the rise or fall of prices, and imply a contract in relation to the prices of the article, and not the article itself. And when the person loans money, and, as a part of the arrangement, it is to be used in such speculative contracts, and he is interested in such contracts, or assists in bringing the parties together and aids in consummating such contract by conspiring with and urging and aiding the party to whom he loans the money to make such investments, and loans him the money to be so invested, he becomes *particeps criminis*, and the law will not aid him to collect the money which he parted with under such circumstances.

There was a trial and verdict for the appellee. A motion was made by appellant for a new trial and overruled, exceptions were saved to the ruling, and such ruling is assigned as error.

Numerous questions arising under this ruling are discussed, but owing to the view we take of the case it is necessary to consider but one, and that is the giving of the seventh instruction.

The court instructed the jury as follows:

"7th. As to the 5th note of $2,000, the 6th note of $500 and the 9th note of $500, the defendant claims a different defence. He claims that he was engaged in dealing in options and futures on the board of trade of Chicago, in buying and selling grain and produce for future delivery, and that such

deals were made without any intent to pay for or deliver the commodity, but to settle the differences only, and were, therefore, illegal and gambling contracts and deals, and that he borrowed the money for which such notes were given to put up or pay margins called for on such deals. If the defendant was engaged in transactions and deals on the board of trade which were unlawful and gambling contracts and deals under the rule I have given you, and if during the pendency of such deals and contracts, margins were called for and were necessary to be paid in order to prevent the deals from being closed out, and if to pay such margins the defendant borrowed such money of the plaintiff, and the plaintiff at the time knew the purpose to which the money was to be applied and furnished it for such purpose and knew the unlawful character of such deals, and if the money was used for such purpose, then the notes given therefor are void and the plaintiff can not recover thereon ; but if the plaintiff did not know the purpose to which the money was to be applied, and furnished it for such purpose, or if the plaintiff did not know the unlawful character of the transactions or the deals then pending, then the notes are valid and the plaintiff is entitled to recover the amount due thereon."

This instruction stated the law to be that the mere knowledge on the part of the lender that the borrower intends to use the money to pay a debt which the borrower is under no legal obligation to pay by reason of its growing out of a gambling or unlawful contract, makes a note given for such money so loaned void. It is true it is coupled with the statement "if the money was used for such purpose," but this latter element, we think, can have no bearing upon the correctness of the former statement. If the note is void it is void at the time it is executed, and its validity does not depend upon whether the borrower used it for such purpose or not, but it illustrates the unsoundness of the doctrine that mere knowledge on the part of the lender of the purpose

Plank *v.* Jackson.

for which the borrower intends to use the money makes the note void, for it recognizes the fact that the lender has no control over the money after he parts with it. And if he simply makes the loan, leaving the borrower at liberty to use it as he may see fit, having no control of it, the borrower may change his mind and use it for a lawful purpose. *Wood* v. *Wood,* 124 Ind. 545–553.

It is held in the cases of *Sondheim* v. *Gilbert, supra,* and *Jackson* v. *City Nat'l Bank, supra,* that a mere knowledge on the part of the lender of the borrower's intention at the time to use the money for an unlawful purpose would not invalidate the note.

Though the authorities differ as to this rule, this court has adopted and adhered to the rule as stated. There can be no difference in the principle applicable to a loan, where the borrower intends to invest in a gambling contract, and where he intends to use it for the purpose of paying losses sustained. In either case the intended use is for an unlawful purpose, and under the rule as laid down by this court there must be something more than mere knowledge on the part of the lender of the borrower's intention to use it for such unlawful purpose. He must do something whereby he becomes *particeps criminis* in the unlawful transaction. But it is suggested by counsel for appellee that this comes within the provisions of the statute, section 4950, R. S. 1881, but we do not think it does. The statute, doubtless, was enacted to prevent the borrowing of money to be at the time wagered ; it provides that notes given " for repaying any money lent at the time of such wager for the purpose of being wagered, shall be void," and by its language covers cases of loaning money at the time of the wager for the purpose of being wagered, and does not include cases where money is borrowed with an intention on the part of the borrower to invest it in some speculative transaction at some time in the future, or to pay losses theretofore sustained. It was intended to prevent the loan of money to persons under

Plank v. Jackson.

the heat of excitement to aid them in making an unlawful use of it at the time, by wagering it. The transactions in which appellant and appellee were engaged differ to some extent from a wager in the strict sense of the word, and yet they are of the same nature ; they are speculative contracts, and against public policy, and declared void on that account.

The court erred in giving the seventh instruction. It was in regard to a vital question in the case, and it must, we think, have influenced the jury. For this error the judgment must be reversed.

The remaining errors discussed may not arise on a retrial of the case, and it is unnecessary to consider them. The law, as applicable to the case, having been settled by recent decisions, it will be to no purpose to consider the remaider of the instructions.

Judgment reversed, at costs of appellee.

Filed Jan. 30, 1891.

### On Petition for a Rehearing.

OLDS, J.—Counsel for the appellee insist on a rehearing in this cause for the reason that the record nowhere shows that the instructions given and refused were ever filed and made a part of the record or signed by the judge, as required by the 6th clause of section 533, R. S. 1881.

This section relates to making the instructions a part of the record by order of court without bill of exceptions, and does not take from a party the right to bring the instructions into the record by bill of exceptions.

In this case the instructions given and refused were brought into the record by bill of exceptions. The record shows the bill was presented to the court and signed and ordered made a part of the record at the same time at which the trial of the cause was had, and before the ruling on the motion for a new trial, and they are properly in the record.

The petition for rehearing is overruled.

Filed June 10, 1891.