C. B. HOFFMAN v. THE FARMERS COÖPERATIVE SHIPPING ASSOCIATION.

No. 15,654.    (97 Pac. 440.)

SYLLABUS BY THE COURT.

CORPORATIONS—*Misconduct of Officers Prohibited by By-laws—Dealing in Futures — Good Faith — Ratification — Notice — Joinder of Actions.* A company was chartered to purchase, sell, ship and handle grain, live stock and other farm products. Its by-laws prohibited the company or any of its officers from speculating in options on grain or other farm products, and provided that any officer guilty of such misconduct should be

36—78 KAN.

personally liable to the company for any damage resulting therefrom. In an action by the company against one who acted as its general manager to hold him personally liable for losses caused by his speculation in options with the funds of the company, *held:* (1) A petition which sets up several causes of action which are alleged to have resulted from the failure of the defendant to perform his duties as manager of the company is not subject to demurrer on the ground of misjoinder of causes of action sounding in tort and on contract. (2) The following language of the by-laws of the company: "or shall engage in speculating, or in options on grain, stock, or produce," taken with its context, means the making of contracts in which the parties speculate in the rise and fall of prices. (3) Where it appears from the findings that the company, under the direction and management of the defendant, engaged in speculating in options on grain, the real question at issue is not whether the transactions were illegal and void, but whether they were in violation of the by-laws and resulted in loss to the company for which the defendant is liable. (4) The fact that the board of directors knew that the defendant was violating the by-laws and failed to take any action to prevent him from so doing can not be held a ratification by the company of his unlawful conduct. The board of directors could not bind the association by ratifying transactions which the by-laws expressly prohibited, for the reason that the by-laws furnished the rules of conduct for the officers of the association and applied as well to the directors as to the defendant. (5) In such an action it is no defense that some of the losses which accrued to the company arose out of speculative transactions which were made by the defendant in good faith and for what he deemed the best interests of the company. (6) Upon the findings showing the manner in which the business of the company was conducted and the necessity for the employment of an assistant general manager the court can not say, as a matter of law, that it was the duty of the defendant to know each day all that was done by his assistant.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed July 3, 1908. Modified.

*A. M. Harvey,* and *John V. Abrahams,* for plaintiff in error; *W. G. Hurd,* of counsel.

*S. H. Allen, Otis S. Allen,* and *George S. Allen,* for defendant and cross-petitioner in error.

The opinion of the court was delivered by

PORTER, J.: The Farmers Coöperative Shipping Association brought an action against C. B. Hoffman to charge him personally with certain losses alleged to have been sustained while he was its general manager. Issues being joined, the cause was referred to George H. Whitcomb, as referee, who made findings of fact and conclusions of law. The court afterward rendered judgment upon the findings in favor of the plaintiff and against the defendant for the sum of $1706.24. The defendant seeks to reverse the judgment and brings these proceedings in error. The plaintiff has filed a cross-petition in error and asks judgment upon the findings for an increased amount.

It was claimed in the petition that the defendant agreed to manage and conduct the business of the association with care, skill, and fidelity; that he failed to perform his contract, and failed to account for specific sums of money which came into his hands as general manager; and that while general manager of the plaintiff company he engaged extensively in dealing in options on the future price of grain on the board of trade at Kansas City, Mo., contrary to the express provisions of the by-laws of the company, resulting in loss to the plaintiff.

The Farmers Coöperative Shipping Association was organized in 1903. The charter provided:

"That the purposes for which this corporation is formed are to purchase, sell, store, ship and handle grain, live stock and other farm products, and supplies, and to acquire, own and operate elevators, warehouses, and such other shipping facilities as the business of the association may require, and all lands necessary or convenient for such purposes."

At the first meeting of the board of directors, and after the election of officers, by-laws were adopted which contained the following provisions:

"SEC. 2. If any officer shall fail to perform any serv-

ice required of him by law or by the board of directors, or shall be guilty of any misuse of the funds or property of the association, or shall engage in the transaction of any business in the name or on behalf of the association without authority from the board, or shall engage in speculating, or in options on grain, stock, or produce, he shall be deemed to have forfeited his position, and upon determining that any officer has committed any such offense the board shall immediately remove him from office.

"SEC. 3. Any officer guilty of misconduct, as provided in section 2 of this article, shall be personally liable to the association for any damage resulting from such misconduct, and the stock of such officer or any indebtedness of the association to him on any account shall be subject to the payment of such liability.

"SEC. 4. This association shall at no time speculate in grain or live stock or other farm products, nor shall the funds of the association be loaned to any person."

The defendant, who was a director of the company, was appointed general manager, and his salary fixed at $4000 per annum. He was given the management and control of the business of the company, with authority to employ such persons as in his judgment were competent and suitable for the various positions they were required to fill, to discharge any employees, to sign checks, drafts and all documents necessary for the transaction of business, to receive moneys and funds from any and all sources, and to distribute them as the business should require. At the time he became general manager of the company the defendant was a member of the firm of C. Hoffman & Son. This firm owned and operated a mill at Enterprise, Kan., which required daily about 6000 bushels of wheat, and the firm had been engaged for twenty-five or thirty years in buying and shipping grain. The company commenced business in July, 1903, under the charge of the defendant as general manager. Its principal business was done at Enterprise, and consisted in buying and selling grain, and also handling grain for customers on consignments. The business increased until the company owned and

operated about thirty-five elevators in Kansas, Nebraska, and Oklahoma.

On October 1, 1903, the main office of the company was removed to Kansas City, Mo., and located in the same building where the board of trade is situated. About the same time the company, acting through its general manager, purchased a membership on the board of trade, which the referee found was not necessary to the carrying on of a cash grain business, but was necessary only to enable the company to buy and sell grain for future delivery. For some time thereafter the business which the company engaged in was the purchase of grain at its stations in the country from its stockholders and other producers, and the sale of the same to millers and other buyers wherever located, or to dealers on the Kansas City market, and in the sale at Kansas City of grain consigned to it for sale on commission.

It also appears from the findings that some time in the spring of 1904 the company, under the defendant's supervision and direction, commenced the business of buying and selling grain for future delivery for customers on the board of trade. One of the company's largest customers was C. Hoffman & Son, and a large part of the business carried on for that firm was of a speculative character, and was conducted for the sole purpose of making profits on the rise and fall of the market. Under the management of the defendant there was a book, known as the "option book," in which the accounts were kept of the future-delivery business. Entries in this book were sometimes made by defendant, but the book was for the most part kept by J. M. Senter, assistant general manager. His appointment was made by the defendant, but was afterward ratified by the board of directors. Senter was permitted by the defendant to sign checks in the name of the company. He soon began speculating on his own account, and conducted a great many transactions in futures, most of which were carried on the books in the name of C.

Hoffman & Son. The losses on all of his transactions were paid out of the funds of the company, by checks drawn by himself. The referee found that these losses amounted to $2396.87, and further found in effect that the defendant did not know of Senter's deals until April 20, 1905, but that with reasonable diligence he should have discovered, as early as February 28, 1905, that Senter was dealing in options with the funds of the company. The referee therefore held that the defendant was not liable for the full amount of the loss on the Senter speculations, but only for the sum of $1528.12, the amount which accrued after the date when the defendant should have made the discovery.

We shall first consider the claims of error made by the defendant. The demurrer to the petition was properly overruled. There was no misjoinder of causes of action sounding in tort and on contract. The separate causes of action were all alleged to have resulted from the failure of the defendant to perform his duties as manager of the company. The cause was a proper one for reference, and the court committed no error in referring it. Before any judgment could have been rendered it was necessary that the books of the company and hundreds of accounts with customers should be examined.

The principal contention of the defendant is that the court should have rendered judgment in his favor on the findings. This contention is based on two propositions: First, that the findings show that the transactions complained of were of a legitimate character, and clearly within the power of the company and of the defendant as general manager; second, that the findings show that defendant's action in dealing in options and futures was acquiesced in and ratified by the board of directors and stockholders of the company.

In support of the first proposition—that the business was of a legitimate character—counsel refer to the charter of the company, which authorized it to pur-

chase, sell, ship and handle grain, and argue that the company could not transact its legitimate business without contracting for the future delivery of grain. It is doubtless true that the provision of the by-laws prohibiting speculations in options on grain was not intended to prevent the company from making a legitimate contract for the future delivery of grain. A number of decisions are cited holding that contracts for the future delivery of merchandise are not void on their face, and that it devolves on him who attacks such a contract to show that it was not intended that the article sold should be delivered and to show that nothing but the difference between the market price and the contract price was to be paid. We deem it wholly unnecessary to consider the question in its broadest scope or to enter into a discussion of the differences between "puts" and "calls" and "options" and "spread-eagles." There can be no question that if, under the guise of a contract for the future delivery of merchandise, the real purpose and intent is merely to speculate in the rise and fall of prices, and the goods are not to be delivered but one party is to pay to the other the difference between the contract price and the market price at a future date, the whole transaction is void. The real question here is not whether the transactions were void, but whether they were in violation of the by-laws and resulted in a loss to the company for which the defendant is liable. The company saw fit to enact by-laws which expressly prohibited speculating in options on grain, and which provided in substance that any officer of the company who permitted it to be done should be liable to the company for any loss which the company thereby sustained. The meaning of the language, taken with the context, is perfectly clear. The words "or shall engage in speculating, or in options on grain, stock, or produce" are well understood to mean the making of contracts in which the parties speculate on the rise and fall of prices. (See 6 Words & Ph. Jud.

Def. 5002; *Plank v. Jackson*, 128 Ind. 424, 26 N. E. 568, 27 N. E. 1117; *Osgood v. Bauder & Co.*, 75 Iowa, 550, 39 N. W. 887, 1 L. R. A. 655; *Pearce v. Foote*, 113 Ill. 228, 55 Am. Rep. 414.)

The findings of the referee are very full and complete with respect to the manner in which the business complained of was conducted on the board of trade at Kansas City, from which it conclusively appears that the losses were caused by the company's engaging in the very kind of business which the by-laws sought to prohibit. There is no pretense of an express ratification of the acts of the defendant by the company. The only claim of ratification is based on findings which show that the board of directors knew that a membership had been purchased on the board of trade, that John W. Moore had been employed as floor salesman, that the company was acting as broker for customers dealing in futures, and that the company itself was doing business of that character. In addition, it is claimed that the matter was discussed at one of the annual meetings and some of the stockholders protested against the company's dealing for itself or others in speculative contracts. The board of directors could not bind the association by any ratification of transactions which the by-laws expressly prohibited, because the by-laws applied as much to the directors as to the defendant and furnished the rules of conduct for all officers of the association. The provision of the by-laws prohibiting speculation in options was never repealed. It can not therefore be said that the company ratified the defendant's acts in conducting the business complained of.

We come now to the claims made by the cross-petition in error. These are based, first, on the contention that judgment should have been rendered on the findings of the referee in favor of the plaintiff for the full amount of the losses sustained by the Senter deals. It is urged that defendant's liability for these losses

should not be made to depend upon his diligence in discovering what it was his duty to know, and that he should be charged with the full amount thereof, for the reason that he permitted business of this kind to be carried on with the company's funds in express violation of the provisions of the by-laws. It is sufficient to say that the evidence is not before us and we are bound by the findings of fact, unless we can say as a matter of law that it was the duty of the defendant to know each day concerning all of Senter's transactions. The referee found that the volume of business done by the company was so great "that the defendant was not able personally to discharge all of his duties, and it was necessary for him to hire an assistant general manager"; that the board of directors knew of the assistant's employment and acquiesced therein, and fixed his salary at $125 per month. He then found that, in view of the facts and circumstances surrounding the Senter purchases of February 17 and February 25, defendant would have discovered, at least by the 28th day of February, that Senter had bought this wheat and was using the funds of the company to pay his losses, and that the items were entered in the "option book" in the account of C. Hoffman & Son, if he had exercised such care and diligence as the facts and circumstances required. In view of these findings we are not prepared to say that as a matter of law the defendant should have made the discovery earlier or that he was bound to know each day everything that Senter did. The evidence was all before the referee, and the finding that it was not possible for the defendant with due diligence to have discovered the facts earlier must be held conclusive.

The next question presented by the cross-petition arises over what is known as the "hedge account." The findings show that the company, under the direction and management of the defendant, purchased options on wheat for the purpose of "hedging"—that is,

protecting the company from loss in buying and shipping wheat to Kansas City. In other words, when the company had contracted to sell actual wheat at Kansas City in the future, in order to protect the company against a rise in the market the defendant purchased these options. The total loss on the "hedge account" is found to be $556.25, which was paid by the company. The referee, however, found that these particular transactions were made for the company "in good faith and acting according to his best business judgment and were believed by him at the time to be for the benefit and best interests of the company." The referee therefore held that these transactions were not in violation of the by-laws of the company, although made by the defendant "solely on his own motion and without the actual knowledge or consent of the board of directors or any of them." And, as a further conclusion of law, the referee held that defendant was not liable for the losses on the "hedge account," and the judgment of the court followed the recommendation of the referee. In this respect we think both the referee and the court erred. Again the real question is not whether speculating in options on grain for the purpose of protecting the dealer from loss on actual trades is reprehensible in morals or opposed to the law, but whether the transactions embraced in the "hedge account" were prohibited by the by-laws of the company. It appears beyond all cavil that these transactions were speculative options, bought by the defendant on account of the company with its money, resulting in a loss to the company. Manifestly the good faith with which he made the deals is no defense. If the by-laws had provided that no officer should speculate in options except when in his judgment it was for the best interests of the company a different question would be presented.

We have carefully considered all the matters urged by both petitions in error and find nothing further which requires comment or which alters our view of

the case. It is our opinion that upon the findings the plaintiff is entitled to recover on the fourth cause of action the amount of the loss sustained on the "hedge account," which the referee found to be $556.25.

It is therefore ordered that the judgment be modified in accordance with this opinion, and judgment is directed in plaintiff's favor for the sum of $2262.49.