## FUTCH v. SANGER.

(Court of Civil Appeals of Texas. Austin. Jan. 14, 1914. Rehearing Denied Feb. 5, 1914.)

1. CONTRACTS (§ 138*)—ILLEGALITY — EFFECT.
The mere knowledge that money was to be used by the borrower for an illegal purpose will not, without some act in furtherance thereof, defeat the lender's right to recover.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. § 138.*]

2. CONTRACTS (§ 138*)—PARTIES IN DELICTO—RELIEF.
Even where a conveyance made without consideration is executed under circumstances showing both parties in delicto, but that one has a mere knowledge of the fact that the property is to be put to an illegal use, without furthering such use, equity will relieve him even to the setting aside of the conveyance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. § 138.*]

3. CANCELLATION OF INSTRUMENTS (§ 37*) — PARTIES IN PARI DELICTO—RELIEF.
A petition in an action for the cancellation of deeds as made without consideration, averring that plaintiff, with notice of defendant's unlawful business of dealing in cotton futures, conveyed land to defendant which he might use as collateral to obtain money to conduct such business, but not showing or alleging that plaintiff did anything in furtherance of such unlawful business, did not show plaintiff to be in pari delicto, and stated a good cause of action.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37.*]

Appeal from District Court, McLennan County; Tom L. McCullogh, Judge.

Action by J. J. Futch against Chas. L. Sanger. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Sleeper, Boynton & Kendall, of Waco, for appellant. J. D. Williamson, of Waco, for appellee.

RICE, J. This suit was brought by appellant against appellee to cancel two certain deeds executed by him to appellee for two lots in the city of Waco, described by metes and bounds, and to remove cloud from title thereto, alleging that on the 19th of November, 1912, appellant executed and delivered to appellee his two certain deeds of conveyance to said two tracts of land, the consideration recited in each being the sum of $1,500 cash in hand paid; that at the time that said deeds were executed appellant and appellee each understood, knew, and agreed that said deeds and transfers were not in fact and in truth made as bona fide deeds and conveyances, but, on the contrary, were made for the following purposes and considerations, to wit: That appellee was then, and had been for a long time prior thereto, engaged in the business of what is commonly known as a "dealer in cotton futures," and that appellee had contracted with him as such cotton broker to sell and buy through his brokerage, and at sundry times and prices, sundry and numbers of bales of cotton, and that it was never in the contemplation of appellant and appellee that the actual delivery of said cotton should ever be made, but, on the contrary, was to be settled in dollars and cents according to the rise or fall of the market price of said cotton, and that, by reason of said buying and selling, and dealing in cotton futures, as hereinbefore alleged, appellee did, on or about said 19th of November, falsely and fraudulently represent to appellant that he (said Sanger) was then in great need of money, and that, if appellant would execute and deliver to him deeds to said property, he could and would use said deeds and title to said premises for security for himself in the furtherance of said business as hereinbefore alleged, and that, by reason of said representations so made by appellee, appellant did execute, sign, and deliver said deeds, but that the same was not at any time a settlement or closing up of the gambling contracts of plaintiff and defendant, or a settlement of any debt or claim due appellee by appellant. Appellant further represented to the court that the considerations recited in said deeds were false and fictitious, and were stipulated in same as a matter of form only, and in truth and in fact there was not paid the sum of $1,500, or any other amount, in either of said transfers, as recited in same, but that said deeds and conveyances were executed and delivered as a matter of accommodation from appellant to appellee. It was further alleged that said

premises were reasonably worth at the time of said transfers the sum of $7,000. A general demurrer was sustained to this petition, and, appellant declining to amend, judgment was entered against him in accordance therewith, from which he has prosecuted this appeal.

The only question presented for our consideration is as to the correctness of the action of the court in sustaining said demurrer. If the transaction set out was void on the ground that it was in violation of law or public policy, then the ruling is correct; otherwise it is not.

[1] It is not alleged that appellant had any interest in said business, or was to derive any profit or advantage therefrom, nor is it alleged that there was any agreement that the money or property was to be used for an illegal purpose, nor was it alleged that appellant made said deeds with the express intention on his part of having them used for an illegal purpose, nor was it alleged that he did anything in addition to the mere making and executing of such deeds, with the knowledge that the same could or would be used by appellee in conducting his business, and it is not alleged that said deeds were in fact used by appellee in procuring funds for conducting his business. The allegations, we think, merely show that, with a knowledge on the part of appellant that appellee was conducting an unlawful business, he executed the deeds, knowing that they would or could be used by appellee for the purpose of negotiating loans in order to carry on his business. It has been held in this state that the mere knowledge that money was to be used by the borrower for an illegal purpose when loaned will not, without further act in furtherance thereof, defeat the lender's right to recovery. See Cleveland v. Taylor, 49 Tex. Civ. App. 496, 108 S. W. 1037; Lewis v. Alexander, 51 Tex. 578; Oliphant v. Markham, 79 Tex. 547, 15 S. W. 569, 23 Am. St. Rep. 363. See, also, to the same effect, Jackson v. City Nat. Bank, 125 Ind. 347, 25 N. E. 430, 9 L. R. A. 657.

In Plank v. Jackson, 128 Ind. 424, 26 N. E. 568, 27 N. E. 1117, statutes which made void notes given for repaying money loaned at the time of a wager, for the purpose of being wagered, do not apply to a note given for money borrowed and used for the purpose of future gambling in wheat, where the lender had no interest in the gambling transactions, though he knew that the borrower intended to engage in them. To the same effect is Tyler v. Carlisle, 79 Me. 210, 9 Atl. 356, 1 Am. St. Rep. 301.

In Waugh v. Beck, 114 Pa. 422, 6 Atl. 923, 60 Am. Rep. 354, it was held that "the mere fact that the lender of money knew that it was to be used for gambling in oil is not sufficient to defeat a recovery, unless he confederated with the borrower for its unlawful use."

In McKinney v. Andrews, 41 Tex. 363, where the plaintiff sued the defendant for the value of a wagon and oxen hired to him for the purpose of hauling cotton from Grayson county to San Antonio, among other defenses interposed by the defendant it was alleged that the wagon and team were used, with the knowledge and consent of plaintiff's intestate, for the purpose of transferring cotton for the Confederate states from the interior to the city of San Antonio, to be there exchanged for munitions of war to be used in carrying on war against the United States. Mr. Chief Justice Moore, in passing upon this defense, said: "The use to which the party hiring or buying purposes to himself to apply the property after he gets it, although known to the other, surely does not necessarily enter into or form any part of the contract. The mere knowledge of such purpose, which may or may not be carried into effect, seems to be too remotely connected with it to avoid the contract, or preclude a recovery upon it. But, if this is not correct, it does not follow that appellant should not have judgment for the value of the wagon and team of oxen, which appellee, as appears from the statement of facts, admitted he had sold, and not for their hire. His contract was for their hire. No authority was given him to sell the property, and apply its proceeds to any unlawful purpose. It was for the mere temporary use to which he contemplated applying the wagon and team during the term of hiring that was tainted with illegality. Though this may avoid the contract of hiring, and preclude a recovery for the use of the wagon and team during the term for which they were hired, still, when this contract was at an end by its terms or the act of the parties, it certainly would not authorize the hirer to convert the property to his own use, or justify him in withholding it from the owner. The consent of an owner to the temporary use of his property for an illegal purpose certainly does not annul his title to it, and will no more warrant the party to whom it has been intrusted in converting it to his own use, or withholding it from the owner, than it would a stranger to the contract."

[2, 3] The court, in Oliphant v. Markham, supra, quoting from Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787, says that the test whether a demand connected with the illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case. Applying this test in the instant case, all that appellant was required to show in order to recover was that the deeds were made merely for the accommodation of appellee, and that no title was intended to be vested thereby, and, in order to defeat his recovery, appellee must allege and prove that the conveyance was made upon an illegal consideration. But, even if we are mistaken in this, we think that the parties were not in pari

delicto, and, irrespective of whether the instruments were executory or executed, appellant would be entitled to recover under the rules of equity. See 2 Pomeroy Eq. Jur. §§ 938 to 942, inclusive; Basket v. Moss, 115 N. C. 448, 20 S. E. 733, 48 L. R. A. 842, 44 Am. St. Rep. 463; Johnson v. Cooper, 2 Yerg. (Tenn.) 524, 24 Am. Dec. 502; Tracy v. Talmage, 14 N. Y. (4 Kernan) 162, 67 Am. Dec. 132; Wright v. Stewart (C. C.) 130 Fed. 905.

Even where the contract is executed, if the circumstances are such as to show that, though the parties are in delicto, still, if one is less guilty than the other, as where he has mere knowledge of the fact that the money or property is to be put to an illegal purpose, without doing anything else in furtherance of the unlawful act, equity will interpose and grant relief, even to the setting aside of the conveyance. Pomeroy's Eq., supra; Tracy v. Talmage, supra.

In section 942, Pom. Eq., it is said: "Lastly, when the contract is illegal, so that both parties are to some extent involved in the illegality—in some degree affected with the unlawful taint—but are not in pari delicto, that is, both have not, with the same knowledge, willingness, and wrongful intent, engaged in the transaction, or the undertakings of each are not equally blameworthy, a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief, by canceling an executory contract, by setting aside an executed contract, conveyance, or transfer, by recovering back money paid or property delivered, as the circumstances of the case may require, and sometimes even by sustaining a suit brought to enforce the contract itself, or, if this be impossible, by permitting him to recover the amount justly due by means of an appropriate action, not directly based upon the contract. Such an inequality of condition exists so that relief may be given the more innocent party in two distinct classes of cases." The first as appears where the parties are equally guilty if considered by themselves alone; but there are collateral and incidental circumstances attending the transaction, rendering one comparatively free from fault, as where imposition, oppression, duress, threats, or undue influence is used to induce the party to enter into the agreement; and, treating of the second class, the author says: "The condition also exists where, in the absence of any incidental and collateral circumstances, the contract is illegal, but is intrinsically unequal, is of such a nature that one party is necessarily innocent as compared with the other; the stipulations, undertakings, and position of one are essentially less illegal and blameworthy than those of the others."

Reviewing the allegations of the petition, they merely declare that the plaintiff, with notice of the unlawful business conducted by defendant, made the conveyances with the knowledge that defendant might or could use them as collateral, for the purpose of obtaining money to conduct his business. This was no more than lending him money, with the knowledge that the same might be used in such business. It is not shown or alleged that he did anything in furtherance of said unlawful business, so that under the authorities we are constrained to believe and hold that the petition stated a good cause of action, and that the demurrer was improperly sustained, for which reason the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.