## ORRIN KIPP v. THOMAS F. WELSH.[1]

December 27, 1918.

No. 21,005.

**Trial — affirmative issue — right to open.**

1. In a suit on a promissory note where defendant admits the execution of the note, but denies plaintiff's title, and alleges that the note is, and always had been, the property of a third party against whom he asserts a defense, the plaintiff has the affirmative and is entitled to the opening.

[1]Reported in 170 N. W. 222.

**Same — order of proof.**

2. Where plaintiff in his case in chief presented evidence which, if uncontradicted, established the bona fides of the original payee of the note, the court properly required defendant to produce evidence tending to show bad faith on the part of such payee before attempting to prove that he, defendant, had been gambling in grain options, and gave the note to enable him to settle the losses incurred.

**Bills and notes — illegality of transaction.**

3. The rule that defendant may prove illegality in the inception of a note, and thereby shift the burden of proof to plaintiff, applies only where the state of the record is such that proof of such illegality will entitle defendant to a verdict, if plaintiff fails to produce further evidence of bona fides.

**Bank — knowledge of officers — when not imputed to the bank.**

4. Where a bank, in making a contract, is represented solely by its cashier, and its president represents the other contracting party, knowledge of facts known to the president, but not known to the cashier, is not imputed to the bank.

**Amendment of pleading.**

5. The court did not err in refusing to allow an immaterial amendment to the answer.

**Evidence of bad faith lacking.**

6. The record contains nothing to impute bad faith to the bank from which plaintiff purchased the note.

Action in the district court for Sibley county to recover $2,500 upon a promissory note. The case was tried before Tifft, J., who denied defendant's motions to dismiss the action, and directed a verdict in favor of plaintiff for $2,777. From an order denying defendant's motion for a new trial, he appealed. Affirmed.

*P. W. Morrison* and *John J. Fahey,* for appellant.

*O'Brien, Young, Stone & Horn,* for respondent.

TAYLOR, C.

Plaintiff brought suit on a promissory note executed by defendant to the First National Bank of Le Sueur, and indorsed and transferred to plaintiff after maturity. Defendant admitted the execution of the note, but put plaintiff's title to it in issue, and alleged that there was

no consideration for it. He further alleged that the E. L. Welch Company was, and at all times had been, the owner and holder of the note, and that the only consideration for it was a balance claimed to be due that company on account of certain alleged gambling transactions in grain options. At the close of the evidence, the court directed a verdict for plaintiff. Defendant made a motion for a new trial and appealed from an order denying his motion.

At the beginning of the trial, defendant claimed the right to take the affirmative and open the case on the ground that he had admitted the execution of the note, and insists that the court erred in holding that. plaintiff had the affirmative and the opening. As defendant had denied in his answer that plaintiff was the owner or holder of the note, and had alleged that the note was, and at all times had been, the property of the E. L. Welch Company, the ruling was clearly correct.

Plaintiff assumed the burden of proof and proceeded to show that on February 28, 1916, defendant and his cousin Michael J. Welsh, residents of Sibley county, went to the office of the E. L. Welch Company, grain brokers in the city of Minneapolis, to settle some claims held against each of them by that company; that they made the settlement with E. L. Welch, the president and managing officer of the company; that in order to procure the money needed to complete the settlement they requested E. L. Welch to telephone to the cashier of the First National Bank of Le Sueur and find out if he would loan it to them; that E. L. Welch called up the cashier by telephone and informed him that Thomas F. and Michael J. Welsh were then in the office and wanted to borrow about $2,000 each, and asked if he would make the loans; that the cashier replied that he knew Thomas F. and would take his loan but did not know Michael J; that E. L. Welch then stated that Michael J. was as good as Thomas F. whereupon the cashier said he would take both loans; that defendant then executed the note in controversy to the First National Bank of Le Sueur as payee, and at the same time executed an order or draft on the bank payable to the E. L. Welch Company for the full amount of the note, less interest to maturity, and delivered both to E. L. Welch who on the same day sent both note and draft to the bank by mail; that they were received by the cashier on the following day, who immediately paid the draft by for-

warding to E. L. Welch a draft for the amount, drawn by the bank on its correspondent in St. Paul, which draft was paid to the E. L. Welch Company, and that the telephone conversation between E. L. Welch and the cashier, and the receipt of the note and draft through the mail, and the payment of the draft, constituted the entire transaction so far as the bank was concerned, and comprised all the information possessed by the bank concerning the transaction. Plaintiff also showed that he had purchased the note from the bank for full value, and that it had been indorsed and transferred to him, but, as his purchase was made after the maturity of the note, it was subject in his hands to all the defenses to which it was subject in the hands of the bank.

Defendant attempted to show, as a defense, that he gave the note for the purpose of paying a balance due the E. L. Welch Company for losses growing out of the purchase of options for the future delivery of grain, and that these transactions did not contemplate the actual purchase or delivery of any grain, but were mere gambles upon the future price of grain and illegal. The court ruled that he must connect the bank with these transactions, or adduce evidence tending to impugn its good faith in taking the note, before showing that the transactions were illegal. Defendant urges this ruling as error. He insists that he had the right to meet plaintiff's case in chief by showing that the note was given as part of an illegal transaction; and that such proof would cast upon plaintiff the burden of showing in rebuttal that he, or one under whom he claimed, had taken the note in good faith within the meaning of the law governing negotiable paper. If plaintiff had proven only sufficient facts to make a prima facie case and then had rested, defendant would have had the right to prove, if he could, that the note was fraudulent or illegal in its inception. Bank of Montreal v. Richter, 55 Minn. 362, 57 N. W. 61; Askegaard v. Dalen, 93 Minn. 354, 101 N. W. 503. But plaintiff showed the entire transaction with the bank in his case in chief, and presented evidence which, if not contradicted, established that the bank had taken the note in good faith for full value. This being the situation, the court properly required defendant to present evidence tending to show bad faith on the part of the bank, before offering evidence to show the illegality of his transactions

with the E. L. Welch Company. Merchants & M. Sav. Bank v. Cross, 65 Minn. 154, 67 N. W. 1147; First Nat. Bank of Morrison v. Busch, 102 Minn. 365, 113 N. W. 898; Rosenstein v. Berman, 116 Minn. 231, 133 N. W. 792.

The rule invoked by defendant applies where the state of the record is such that proof of fraud, illegality or want of consideration will entitle the defendant to a verdict, unless the plaintiff produces further evidence of bona fides, but that is not this case.

The bank is located at Le Sueur, Minnesota, and its business is managed and conducted wholly by its cashier subject to the supervision of its board of directors. E. L. Welch resides in the city of St. Paul and manages and conducts the business of the E. L. Welch Company in the city of Minneapolis. He is the brother-in-law of the cashier of the bank, and also president of the bank, but receives no salary from it, and takes no active part in its management or business affairs, except to attend meetings of the board of directors. The E. L. Welch Company is a member of the Minneapolis Chamber of Commerce and engaged in the grain brokerage business, and this fact was known to the cashier of the bank. Defendant made his settlement with the E. L. Welch Company in the office of the company in the city of Minneapolis. He admitted making the note to the bank, and admitted drawing the draft on the bank in favor of the E. L. Welch Company for the proceeds of the note, and that he turned both the note and draft over to the company, but claimed that he made the papers in this form at the instance of E. L. Welch. He denied requesting E. L. Welch to telephone to the bank, and denied any knowledge of the telephone conversation with the cashier of the bank.

No fraud or mistake is alleged or claimed in respect to the execution of either note or draft, but defendant insists that the above facts are sufficient to impute to the bank notice that the loan was being procured to pay a gambling debt, and that such notice is sufficient to charge the bank with bad faith in taking the note. Defendant contends that E. L. Welch necessarily knew the purpose for which the money was obtained, and, as he was president of the bank, that his knowledge was notice to the bank. But in this transaction the bank was represented by its cashier, and E. L. Welch represented the other contracting party. Under

such circumstances, his knowledge is not imputed to the bank. First Nat. Bank of West Minneapolis v. Persall, 110 Minn. 333, 125 N. W. 506, 675; First Nat. Bank of Gilbert v. Bailey, 127 Minn. 296, 149 N. W. 469, and cases cited therein.

There is no evidence that the bank had any connection with the alleged option deals, nor that the cashier had any knowledge of these deals, or of the purpose for which the money was procured. But even if he had known that defendant intended to use the money in paying a gambling debt, that fact would not invalidate a note given to the bank for money actually loaned by the bank to the defendant, unless it further appeared that the bank had participated in the illegal transaction. Armstrong v. American Exchange Nat. Bank, 133 U. S. 433, 10 Sup. Ct. 450, 33 L. ed. 747; Jackson v. City Nat. Bank, 125 Ind. 347, 25 N. E. 430, 9 L.R.A. 657, and cases cited in note in 9 L.R.A. 657.

Defendant also urges as error the denial of a motion to amend his answer made near the end of the trial. This ruling was clearly within the discretion of the court. Furthermore the proposed amendment did not go to the merits and could not have affected the result.

We find nothing in the record which imputes bad faith to the bank, and the order appealed from is affirmed.