(No. 12828.—Judgment affirmed.)

THE ELGIN NATIONAL BANK, Defendant in Error, *vs.*
FRANK A. GOECKE *et al.*—(WILLIAM MAIR *et al.* Plain-
tiffs in Error.)

*Opinion filed December 21, 1920.*

1. BILLS AND NOTES—*accommodation indorsers are liable to a
holder for value.* Accommodation indorsers are liable to a holder
for value subsequent to the payee where the note is indorsed be-
fore maturity and without notice to the holder of any restricted
use, although at the time of taking the instrument the holder knew
the indorsers were accommodation parties.

2. SAME—*holder who takes note before maturity as collateral
for pre-existing debt is holder for value.* An indorsee of a negoti-
able note who has taken it before maturity as collateral security for
a pre-existing debt and without any express agreement is deemed
a holder for a valuable consideration, and he holds it free from
latent defenses on the part of the maker.

3. SAME—*accommodation indorser is not released by renewal of
debt secured by the note.* The renewal of a debt for which ac-
commodation paper has been deposited as collateral security does
not release the liability of the accommodation indorser.

4. SAME—*the right of subrogation does not arise before debt is
paid.* The right of subrogation, as between a surety and the holder
of a note, does not exist until the surety has actually paid the debt.

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on appeal from the Circuit
Court of Kane county; the Hon. MAZZINI SLUSSER, Judge,
presiding.

J. C. MURPHY, and CHARLES H. FISHER, for plaintiffs
in error.

R. S. EGAN, E. C. TOBIN, JOHN M. RAYMOND, and
JOHN K. NEWHALL, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On September 18, 1911, Frank A. Goecke was manager
and Henry Schmidt was president of the Elgin National
Brewing Company. Goecke borrowed $3000 from the El-

gin National Bank and Schmidt guaranteed the note given by Goecke for the loan. The money was turned over to Goecke and by him placed in the First National Bank of Elgin and checked out to pay the indebtedness and operating expenses of the brewing company. This Goecke-Schmidt note has never been paid but has been renewed from time to time. The last renewal was made November 22, 1912, by the giving of a new note due in six months from that date. On September 30, 1912, the Elgin National Brewing Company executed two notes, payable on demand, to its own order,—one for $3000 and the other for $2500. The latter note, although executed at the same time as the former, was dated October 30, 1912. Both notes were indorsed in blank by the brewing company and by Frank A. Goecke, William Mair, Arthur T. Rogers, Franz Walther and A. C. Rathbun. Goecke was then acting as president of the brewing company and had the two notes executed, and they were to be used by the brewing company to pay sight drafts attached to bills of lading for two car-loads of supplies for the brewery. The notes were not used for the purpose for which they were executed but were left with the brewing company's officers. They were accommodation paper, to be used by the brewing company for the purpose aforesaid, neither Mair nor Rogers having received anything for indorsing the notes. On December 10, 1912, Goecke instructed the book-keeper for the brewing company to deliver said two notes to the Elgin National Bank. The $3000 note was delivered to the bank and accepted by it as collateral security for the Goecke-Schmidt note for $3000. The $2500 note was delivered to the bank in payment of the following notes executed by the brewing company, to-wit: Two notes aggregating $950 to Brammer Bros.; two notes aggregating $1050 to Frank A. Goecke; and one note to J. C. Eckerley for $380,—all of which had been purchased by the bank of the payees. These notes lacked about $30 of amounting to $2500, and the remainder was

paid in cash to the book-keeper for the brewing company and all the notes so paid were then canceled by the bank. The bank officers knew at the time they accepted the said two notes that they were accommodation notes and were indorsed without consideration by Mair and Rogers but did not have knowledge that they were given for a restricted use or purpose, and there was nothing on the face of the notes to indicate any such restriction. Since the execution of said two notes the brewing company has failed and gone into the hands of a receiver. On presentment and demand to the brewing company for payment of the two notes the brewing company failed to pay the same and the notes were duly protested for non-payment. Defendant in error, the Elgin National Bank, brought suit in the circuit court of Kane county against all five of the indorsers of the two notes. There was a default as to all the defendants except Mair and Rogers, who defended the suit on various issues formed by the pleadings. The cause was submitted to the court without a jury and judgment was entered in favor of the bank for the sum of $7157.65, being the amount of the notes with interest. On appeal to the Appellate Court for the Second District the judgment of the circuit court was affirmed. A writ of *certiorari* was granted, and the record has been brought to this court for review on errors assigned by Mair and Rogers.

One who has placed his signature upon a negotiable instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he has clearly indicated by appropriate words his intention to be bound in some other capacity. (Hurd's Stat. 1917, chap. 98, sec. 63, p. 2006.) Where such person indorses such an instrument in blank before delivery he is liable as an indorser, if he signs for the accommodation of the payee, to all parties subsequent to the payee. (Ibid. sec. 64.) Plaintiffs in error, as accommodation parties and indorsers of the notes in question, indorsed the same for the purpose of lending their names

and credit to the brewing company. They are therefore liable to defendant in error on the notes, although the defendant in error at the time of taking the instruments knew plaintiffs in error to be only accommodation parties, if the defendant in error is a holder for value, as the notes were indorsed to it before maturity and without notice of their restricted use and purpose. (Ibid. sec. 29, p. 2003; *Naef* v. *Potter,* 226 Ill. 628.) The proof clearly establishes as to the $2500 note that defendant in error is a *bona fide* holder for value. The consideration paid by the bank for this note was the cancellation and surrender by it of the several other notes executed by the brewing company to other parties and indorsed to defendant in error and the payment in cash to the brewing company of the difference between the notes so canceled and the face value of the $2500 note. Defendant in error was entitled to judgment on this note under the evidence in the record.

The $3000 Goecke-Schmidt note had been extended for six months by the giving of a new note on November 22, 1912, as already stated. The brewery note for $3000 indorsed by plaintiffs in error was not delivered to defendant in error at its bank and accepted by it as security until December 10, 1912,—about eighteen days after the giving of the extension note to which it was collateral security. There is no proof in the record that at the time the Goecke-Schmidt note was renewed the last time there was an agreement that the brewery note was to be put up as collateral and in part consideration for the extension of the Goecke-Schmidt note or debt. The proof simply shows that this brewery note for $3000 was delivered to defendant in error as aforesaid and accepted by it as collateral to the Goecke-Schmidt note, which had already been extended or renewed eighteen days prior thereto and with no further agreement whatever. Upon this showing in the record it is argued by plaintiffs in error that the mere voluntary delivery by the brewery company of the brewery note as collateral secur-

ity for the Goecke-Schmidt note and the acceptance of such note as collateral for the pre-existing debt, and without agreement for further extension of time or other agreement, does not· make the bank a *bona fide* holder for value and that the defense of want of consideration should have been held by the court as established. It is the well established law in this jurisdiction that an indorsee of a negotiable note who has taken it, before its maturity, as collateral security for a pre-existing debt and without any express agreement is deemed a holder for a valuable consideration, and that he holds it free from latent defenses on the part of the maker. There are many other jurisdictions that hold the opposite view upon this question and some very strong and convincing reasons are given by those courts for their holdings. This question was thoroughly gone into by this court in the case of *Manning* v. *McClure,* 36 Ill. 490, and some of the cases holding the opposite view are therein cited and discussed. The rule as above announced was the result of due deliberation and consideration by this court, and it has been a rule now for more than fifty years and has been frequently re-affirmed in other cases. (*Nix* v. *National Bank of Bloomington,* 91 Ill. 20; *Zollman* v. *Jackson Trust and Savings Bank,* 238 id. 290.) Besides, the legislature has by section 25 of our Negotiable Instruments act declared this rule to be the law of this State by statutory enactment.

The contention that the renewal of the Goecke-Schmidt note without the assent of the plaintiffs in error discharged them from liability cannot be sustained. This note was not renewed after the brewery note was accepted at the bank as collateral. Besides, the renewal of a debt for which an accommodation paper has been deposited as collateral security does not release the liability of the accommodation indorser.

There is no merit in the contention of the plaintiffs in error that they are released from paying the judgment be-

cause defendant in error has failed to recognize their right of subrogation or their right to proceed against Schmidt and Goecke on the Goecke-Schmidt note. If they had such right no demand was made on defendant in error for such note. Besides, it is one of the elementary principles of subrogation that the right does not exist until the surety has actually paid the debt. (25 R. C. L. 1315.) Plaintiffs in error have not paid to the bank the debt represented by either the $3000 note or the $2500 note.

No defense has been established in this case by plaintiffs in error, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.* ·