FIRST NATIONAL BANK OF WILLMAR v. NELS O.
MALMQUIST AND OTHERS.[1]

February 8, 1924.

No. 23,622.

**When indorsee of accommodation note is protected against defenses of maker.**

1. A bank which takes by indorsement an accommodation promissory note, knowing it to be accommodation, as collateral security to an antecedent liability of a bank as an indorser on discounted paper, is protected against defenses of the maker just as a bona fide purchaser of negotiable paper for which a present consideration is given is protected. Under sections 25, 26 of Negotiable Instrument Act the indorsee taking for a pre-existing debt is a holder for value, and under section 29 it is no defense to the accommodation maker that the indorsee knew that he was an accommodation party.

**When burden is on indorsee to prove purchase in good faith.**

2. Where there is fraud in the inception of a note, so that the indorsee takes through a defective title the burden is upon him to prove that his purchase was in good faith without notice.

**Plaintiff proved it was a good faith purchaser.**

3. The evidence required a holding, as a matter of law, that the plaintiff bank, which took by indorsement from a bank an accommodation note as security for such bank's indorsements of paper discounted, sustained the burden of proof that it was a good faith purchaser.

**Note was indorsed as collateral security for a continuing liability.**

4. Under the evidence the accommodation note was indorsed and delivered to the plaintiff bank as collateral security for the continuing liability of the indorsing bank upon paper then or afterwards discounted.

**After notice of a defense by defendants, plaintiff could hold note as to prior liability.**

5. Though the plaintiff, after taking the collateral note, acquired notice that the defendants had or claimed a defense, it could hold such

[1]Reported in 197 N. W. 271.

note as security for the amount of the continuing liability of its indorser, existing at the time the collateral note was taken, though the form of the indorsed obligations changed, different ones taking their place, so long as such liability of its indorser exceeded the collateral note.

### Offer of proof of fraud properly rejected.

6. The plaintiff having assumed and sustained the burden of proving that it was a purchaser in good faith, though it took through a defective title, it was not error to reject testimony of the defendants offered in proof of fraud in the inception of the note, for, if proved, the result would not be different.

Action in the district court for Meeker county to recover upon a promissory note. The case was tried before Qvale, J., who at the close of the testimony denied defendants' motion for a directed verdict and granted plaintiff's motion for a directed verdict in its favor. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*L. K. Sexton, E. W. Campbell* and *Alva R. Hunt,* for appellants.
*Daly & Barnard,* for respondent.

DIBELL, J.

Action on a promissory note of $10,000, dated April 5, 1921, made by the defendants Malmquist to one Orred, by him indorsed to the Green Lake State Bank of Spicer, and by that bank indorsed to the plaintiff, First National Bank of Willmar. The court directed a verdict for the plaintiff. The defendants appeal from the order denying their alternative motion for judgment or a new trial.

The Green Lake bank was a correspondent of the Willmar bank. It indorsed to the Willmar bank negotiable paper and took credit on its drawing account. Shortly before maturity the Willmar bank returned the discounted paper to the Green Lake bank and charged its account. This was their way of doing business. Paper passed back and forth continuously. The amount of the discounts changed as paper came and was credited, or was returned and charged, and the drawing account of the Green Lake bank changed as credits were given and charges made and drafts drawn.

Prior to April 5, when the note was made, Orred, who was the cashier of the Green Lake bank, was an embezzler in excess of $75,-000. The Green Lake bank knew of it some time before. The Willmar bank was apprised of it shortly before April 4. On that day the two banks went over the situation together. It was understood by both that Orred had forged notes. It was supposed, and it seems to be the fact, that some of the discounted notes in the Willmar bank were forged. The Willmar bank was willing to continue making discounts, but it insisted upon collateral. On April 9, 1921, the Green Lake bank indorsed to the Willmar bank the note of $10,000, and another note not here involved, as collateral. The Willmar bank receipted as follows:

"This is to acknowledge receipt of notes as follows: [Notes described.]

"These notes are held by this bank as security for any indebtedness owing by the Green Lake State Bank to this bank."

At this time the liability of the Green Lake bank on discounted paper was in excess of $30,000. The $10,000 collateral note was accommodation paper given by the Malmquists to Orred. The answer alleges that Orred procured the paper by fraud under circumstances making his title defective, and that the Green Lake bank and the Willmar bank had notice of the facts. It is to be taken as true, upon the record as it is, that the Green Lake bank held by a defective title, for an offer to prove the fact was rejected. And upon the record we assume that the plaintiff had notice that the note was given by the defendants as an accommodation to Orred.

The points involved may be roughly summarized:

(1) Whether one who takes accommodation paper, with knowledge that it is such, as collateral security for an antecedent debt, is protected as a good faith purchaser.

(2) Where the burden of proof of good faith rests when there is fraud in the inception of paper.

(3) Whether, as a matter of law, the plaintiff was a good faith purchaser of the collateral accommodation note.

(4) Whether the collateral note secured the continuing liability of the Green Lake bank on. its indorsements of discounted paper, through the particular paper changed.

(5) Whether the effect of the plaintiff's acquiring notice, after it had taken the accommodation note, of a defense thereto, was to prevent it from holding it for such continuing liability which was always in excess of the note.

(6) Whether, the plaintiff having assumed and sustained the burden of proving that he was a good faith purchaser, notwithstanding the defective title of its indorser, it was error to reject proof of fraud in the inception of the collateral note.

1. It always has been the holding of this court, following the Federal rule, that one who takes by indorsement a promissory note as collateral security is a purchaser for value. Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38, 40 Am. St. 336; Haugan v. Sunwall, 60 Minn. 367, 62 N. W. 398; First Nat. Bank v. Busch, 102 Minn. 365, 113 N. W. 898; German American State Bank v. Lyons, 127 Minn. 390, 149 N. W. 658. The facts in these cases arose prior to the enactment of the Uniform Negotiable Instruments Act. In the last case it was said that the holding was in harmony with section 25 of that act, G. S. 1913, § 5837, which provides that "an antecedent or preexisting debt constitutes value." Section 26 makes a holder under section 25 a holder for value. The doctrine was applied, after the Negotiable Instruments Act, in Snelling State Bank v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663, and Bank of Montreal v. Beecher, 133 Minn. 81, 157 N. W. 1070, without a reference to the act. Apparently it was not in mind. It is the practically universal holding under the act. Brannan, Neg. Inst. Act. p. 98, § 25.

The doctrine of this court, embodied in the uniform act, is that a bank purchasing in good faith without notice, crediting the account of its indorser, and afterwards acquiring notice, is only protected in the amount of the credit then drawn. 1 Dunnell, Minn. Dig. § 952; Neg. Inst. Act. § 54, G. S. 1913, § 5866. This doctrine has no application to the rule embodied in section 25 and is not a limitation upon it.

By section 29 of the uniform act, G. S. 1913, § 5841, an accommodation party "is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." The proper construction of section 29, applicable to the situation presented by the record before us, having in view section 25, is that one who takes bona fide and in due course accommodation paper, knowing it to be accommodation, as collateral to an antecedent debt is protected just as a bona fide purchaser upon a present consideration, or one who in good faith takes other paper as collateral security for an antecedent debt, is protected. The authorities, so far as we find any directly to the point, so hold. Elgin Nat. Bank v. Goecke, 295 Ill. 403, 129 N. E. 149; Elgin Nat. Bank v. Goecke, 213 Ill. App. 559; Neal v. Wilson, 213 Mass. 336, 100 N. E. 544; Fox v. State, 102 Ark. 451, 145 S. W. 228. The plaintiff was a holder for value under sections 25, 26, and the defendants were liable to it under section 29, though it knew they were accommodation makers.

2. When there is fraud in the inception of the note, and on the record we must assume that there was in the note of the Malmquists to Orred for there was an offer to prove, the burden is upon a purchaser to prove that he purchased in good faith and for value. This is the effect of section 59 of the act, G. S. 1913, § 5871, placing upon the purchaser the burden of proof when the indorser's title is defective under section 55 of the act, G. S. 1913, § 5867. Bank of Montreal v. Beecher, 133 Minn. 81, 157 N. W. 1070; Stevens v. Pearson, 138 Minn. 72, 163 N. W. 769. Where the title of the indorser is not defective, the burden of proof of notice or knowledge is upon the maker. First Nat. Bank v. Carey, 153 Minn. 246, 190 N. W. 182. These were the familiar holdings of this court prior to the uniform act. 1 Dunnell, Minn. Dig. § 1040, and cases.

3. The trial court, when it directed a verdict for the plaintiff, held that it had sustained the burden of proof required of one taking through another having a defective title, and that it was as a matter of law a bona fide purchaser; otherwise it could not have directed a verdict.

Its holding was right. The bank took the collateral in regular course. There is nothing suggestive of knowledge, or of notice which would have led to knowledge, of a defense open to the defendants. It was natural enough that Orred should protect by accommodation paper the Green Lake bank against his embezzlement, and that the bank should use it to protect the plaintiff discounting its indorsed paper. The security which the plaintiff took did not come from a suspicious source.

4. The collateral was deposited by the Green Lake bank with the Willmar bank upon an understanding that it should be collateral to its present or future indebtedness or liability upon its indorsements. The previous dealings of the parties and their negotiations at the time indicate this. Such is the effect of the receipt given. It was expected that the Green Lake bank would gradually work out of the losses which it had sustained through Orred, that this would take time, and that it would continue discounting notes with the Willmar bank and probably increase its line of credit. The collateral was not intended to be security for liability upon a single piece of discounted paper, or alone upon paper then discounted, but upon all discounts present or future. It was to secure the continuing liability of the Green Lake bank. The testimony of the president of the Willmar bank is not always definite; but all of the evidence, taken together, permits no other construction than that which we give to the transaction.

5. Within a few days after the taking of the collateral note, the bank received notice, which, if pursued, would have led to knowledge that the defendants had or claimed a defense.

The continuing liability of the Green Lake bank on its discounts was always in excess of the amount of the collateral note. The note had been indorsed to secure this continuing liability. The indorsed and discounted notes, held by the Willmar bank on April 9, were not held at the time of the trial. They had been returned to the Green Lake bank and paid or renewed or otherwise absorbed. But the Green Lake bank's continuing liability on indorsements, existing on April 9, which the collateral was to protect, remained always in excess of the collateral note. The collateral note must be held to

secure that liability. What the result would be had the liability become less than the accommodation note, and the Willmar bank, having notice of a defense, had taken more discounts, is a question not involved. The rule noted in paragraph 1, as to the protection of a bank buying a note, giving credit for it, and getting notice of a defect before the credit is exhausted, has no application to the facts before us.

6. The court rejected proffered testimony in proof of fraud in the inception of the accommodation note. The plaintiff assumed and bore the burden of proof that it was a good faith purchaser, as we hold in paragraph 3. This true, it was not error to reject testimony of the fraud. If found, the result would not be different; and in sustaining a directed verdict fraud is assumed. See Kipp v. Welsh, 141 Minn. 291, 170 N. W. 222; Bank of Montreal v. Beecher, 133 Minn. 81, 157 N. W. 1070.

The defendants have no defense against the plaintiff bank. If they have been wronged, as on the record we must assume, their remedy is elsewhere.

Order affirmed.