## ST. PAUL STATE BANK v. RIPPE GRAIN AND MILLING COMPANY.[1]

June 27, 1924.

No. 23,997.

**When failure of consideration for draft credited to depositor's account.**

1. If a depositor's account with a bank shows a balance in his favor when the bank receives from him a draft made payable to its order and credits it to his account, and thereafter the bank is closed before the depositor draws out any portion of the proceeds of the draft, there is a failure of consideration for the draft.

**Not a good defense against indorsee who took draft in good faith.**

2. Failure of consideration cannot be asserted as a defense against an indorsee who took the draft in good faith and for value.

**Memorandum not conclusive.**

3. Where the indorsee is a bank with which the payee bank had long kept an account upon which drafts were regularly credited as they were received, the mere fact that a memorandum accompanying the draft bore upon it the words "We enclose for collection and credit," does not show conclusively that the indorsee was not to give the payee credit before the draft was collected.

**Payee's indebtedness to indorsee a valuable consideration.**

4. The indebtedness of the payee to the indorsee, existing at the time when the draft was received and credited, was a valuable consideration for the taking of the draft.

**Good faith of indorsee not passed on.**

5. Whether the circumstances made the good faith of the indorsee a question for the jury is not determined in view of the fact that there must be a new trial for error in the instructions.

**Charge incorrect.**

6. Under the Uniform Negotiable Instruments Act there was a presumption that the draft was issued for a valuable consideration and that the indorsee was a holder in due course. Unless and until

[1]Reported in 199 N. W. 519.

it was shown that the title of the payee was defective, the indorsee was not obliged to prove that it became a holder in due course, and an instruction to the contrary was erroneous.

**No change in theory of case allowed on appeal.**

7. The instruction cannot be justified on the ground that the payee negotiated the draft in breach of faith and under such circumstances as amounted to a fraud upon the drawer, when neither in the pleadings nor at the trial was that issue presented for litigation. The rule that a case must be considered on appeal in accordance with the theory on which it was tried must be applied.

Action in the district court for Martin county to recover $2,002.31. The case was tried before Dean, J., who at the close of the testimony denied plaintiff's separate motions for directed verdicts, and defendant's motion for a directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying its motions for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed.

*John A. Pearson*, for appellant.

*Haycraft & McCune*, for respondent.

LEES, C.

Appeal from an order denying plaintiff's blended motion for judgment or a new trial of an action brought on a draft for $2,000 drawn by defendant on the Cargill Commission Company, made payable to the Emmet County Bank and indorsed by that bank to the plaintiff.

It had been defendant's practice to issue such drafts and deposit them for credit, drawing checks against its account with the payee bank to pay for grain purchased. The draft in question was dated December 18, 1920, deposited and credited December 20 and indorsed and mailed to the plaintiff on that day with other credit items listed on a slip reading as follows:

<pre>
            Emmet County Bank,                     72-907
         Armstrong, Iowa, 12/20 1920
    St. Paul St. Bank, St. Paul, Minn.
        We enclose for collection and credit:
    Payer                                    Amount
    Fairmont Cry. Co. ..................      2.78
    1st Nat. Bak., .......................    2.39
    Mid. City T. & Svgs. Bk., ..........     99.41
    Ill. T. & Svgs. Bk., .................    7.13
    Cargill Com. Co., ...................  2000.00
    .....Savgs Bk., .....................    39.00
    .............   ....................      8.70
    .....Trust Co., ....................·.   13.00
                                           _____
         Total ......................   2172.41
</pre>

Plaintiff received the draft on December 21 at 9 a. m. and before the close of business on that day credited the Emmet County Bank with the amount of the items shown by the slip. In the usual course of business the draft was sent through the regular channels for presentation to the Cargill Commission Company and was presented on December 23, but in the meantime defendant had stopped payment, so the draft was refused.

The Emmet County Bank was conducted by a copartnership, in which Thomas Doughty was the active partner. He came to St. Paul on December 20 and had a conference with the president of the plaintiff bank. Subsequent developments proved that Doughty's bank was in trouble and it is a fair inference that the conference had to do with its affairs. At 8:30 o'clock the next morning Doughty was found dead in bed. It is hinted that he committed suicide, but there was no proof that such was the fact. Plaintiff's cashier learned of Doughty's death before the credit entry of the draft was made in its books. The Emmet County Bank did no business after December 21 and is now in charge of a receiver. At the close of business on December 20, its account with plaintiff was overdrawn to the amount of $314.60. The credit items received

on December 21, other than the draft, reduced the amount to $142.19. For a long time plaintiff had regularly discounted notes taken by the Emmet County Bank, crediting its account with the proceeds of these transactions. When one of the notes fell due it would be charged against the account and returned to the bank. It was liable to plaintiff, either as indorser or guarantor of the discounted notes, in an amount exceeding $100,000. About two weeks before his bank closed Doughty conveyed 600 acres of land and assigned several real estate mortgages to plaintiff as security for the bank's liability on these notes. On December 21 one of the notes fell due. It amounted to $1,634.04 including accrued interest, and that amount was charged against the bank, so, at the close of business on December 21, plaintiff's books showed a credit balance of $233.77 in favor of the Emmet County Bank. When the Cargill draft was returned dishonored, plaintiff charged it back to the bank and commenced this action. While the action was pending plaintiff filed its claim against the bank with the receiver.

Upon this state of facts the following questions were presented and argued: (1) Was there a failure of consideration for the draft? (2) If so, what is the effect upon the rights of the plaintiff? (3) Did plaintiff have a right to credit the Emmet County Bank with the draft before it was collected? (4) If the draft was properly credited, then was it taken for value as defined by section 5837, G. S. 1913? (5) Did plaintiff take the draft in good faith? (6) Did the court instruct the jury correctly with respect to the burden of proof? (7) Was the draft negotiated by the Emmet County Bank in breach of faith or under such circumstances as to amount to a fraud?

1. Defendant had issued checks upon the Emmet County Bank which were outstanding when the bank closed but had not been presented for payment. No part of the proceeds of the draft was drawn out, and when the bank closed defendant had a credit balance of $85.30 exclusive of the draft. It is clear that the consideration for the draft failed.

2. Unless plaintiff is a holder in due course, failure of consideration is a defense. Section 5840, G. S. 1913 (section 28, Unif. N. I.

Act). The important question is whether plaintiff has the rights of a holder in due course. It will be considered later.

3. Since the year 1905, plaintiff had been the Twin City correspondent of the Emmet County Bank. It had regularly received for deposit drafts taken by the last named bank from its depositors. With the exception of the draft in question, all those drawn on the Cargill Company had been paid. The record does not show whether the same form of deposit slip was used in every instance. All we have is the fact that the slip accompanying the last draft begins with the words: "We enclose for collection and credit." Standing alone these words indicate that plaintiff was to collect the draft and credit the payee with the proceeds, but when read in connection with the undisputed testimony of plaintiff's cashier as to the manner in which the business of the two banks was regularly conducted, it would be difficult to conclude that the draft was not transmitted to plaintiff as a cash item for which immediate credit was to be given. In the absence of a showing that there was a different understanding, the draft became the property of the plaintiff and it became the debtor of the Emmet County Bank. In re State Bank, 56 Minn. 119, 57 N. W. 336, 45 Am. St. 454; Security Bank v. Northwestern Fuel Co. 58 Minn. 141, 59 N. W. 987. Upon the record now before us we hold that a finding that it was intended that plaintiff should not credit the payee bank's account with the draft before it was paid could not be sustained.

4. Under section 5837, G. S. 1913 (section 25, Unif. N. I. Act) an antecedent or pre-existing debt is a valuable consideration. This section is in line with the Federal rule, which was the rule followed by this court before the act was adopted. First Nat. Bank v. Malmquist, 158 Minn. 140, 197 N. W. 271. When plaintiff opened for business on the morning of December 21, the Emmet County Bank owed it $314.60. The note already mentioned increased the indebtedness to $1,948.64. The items listed on the deposit slip total $2,172.41. The account would have shown a debit balance of $1,776.23 at the close of business on December 21 if the draft had not been accepted and credited. We see no escape from the conclusion that, to that extent at least, plaintiff took the draft for

a valuable consideration as defined by the statute. Section 5866, G. S. 1913 (section 54, Unif. N. I. Act); Uniform Laws Ann. p. 228.

5. To acquire the rights of a holder in due course, the draft must have been taken in good faith as well as for value. There are circumstances from which it may be inferred that plaintiff's president knew that the Emmet County Bank was in financial straits. Evidently Doughty's tragic death precipitated the crisis which had been impending. Plaintiff's cashier learned of Doughty's death in the morning. The draft was credited to his bank in the afternoon. Possibly a jury might properly find that, when credit was given, plaintiff's president and cashier had knowledge of such facts that their action in taking the draft amounted to bad faith. Section 5868, G. S. 1913 (section 56, Unif. N. I. Act.) We express no opinion as to that for the case must be tried again for error in the instructions and the evidence at the second trial may not be the same.

6. The jury were instructed that plaintiff was required to prove by a preponderance of the evidence that it was the owner of the draft; that it bought it for a valuable consideration, without notice, in good faith, and in the ordinary course of business. Plaintiff entered an exception to the charge "that the burden of proof was on plaintiff to establish good faith." It had duly requested an instruction that no defense which defendant had against the Emmet County Bank was good against the plaintiff, unless defendant proved that plaintiff had knowledge on or before December 21 of such defense, or knowledge of such facts indicating such defense that its action in taking the draft amounted to bad faith; also an instruction that the burden of proof was on defendant to show that plaintiff had such knowledge. These requests were refused and plaintiff excepted. Error is assigned in the giving of the instruction above mentioned and in the refusal to give those requested.

The draft was a negotiable instrument and was attended by the presumption of law with which negotiable paper is favored. By virtue of the statute, it is deemed prima facie to have been issued for a valuable consideration, defendant is presumed to have become a party to it for value, and plaintiff is deemed prima facie to be a

holder in due course. Section 5836, G. S. 1913 (section 24, Unif. N. I. Act). Unless and until it was shown that the title of the Emmet County Bank was defective, plaintiff was not required to prove that it became a holder in due course. Section 5871, G. S. 1913 (section 59, Unif. N. I. Act.) Plaintiff's requested instructions should have been given instead of the instruction which was given. First Nat. Bank v. Malmquist, supra. The fact that the term "preponderance of evidence" instead of "burden of proof" was used does not do away with the objection to the instruction. The jury would naturally suppose that plaintiff must prove the things enumerated before it could claim the rights of a holder in due course. The language of the exception was inaccurate, but it was sufficient to preserve plaintiff's right to question the instruction.

7. Defendant contends that the instruction was not erroneous because the draft was negotiated in breach of faith and under such circumstances as amounted to a fraud, and hence the title of the Emmet County Bank was defective. Sections 5867, 5871, G. S. 1913 (sections 55, 59, Unif. N. I. Act); McWethy v. Norby, 143 Minn. 386, 173 N. W. 803; Farmers State Bank v. Skellet, 149 Minn. 266, 183 N. W. 831.

The answer admitted that defendant drew the draft and delivered it to the payee bank. It alleged that it was drawn and delivered without consideration and solely for the bank's accommodation; that the bank was insolvent; that defendant was ignorant of that fact; and that plaintiff had knowledge of the insolvency of the payee bank and of the fact that the draft was issued without consideration when it took it. There is no direct allegation that the draft was negotiated in breach of faith or under circumstances amounting to fraud. It is not alleged that it was accepted as a deposit with knowledge on the part of the owners of the payee bank that they could not meet their obligations; therefore the rule that such an act is fraudulent, as is held in Steele v. Commissioner, 240 Mass. 394, 134 N. E. 401, and in the cases cited in the note thereto in 20 A. L. R. 1203 cannot be invoked. The case was not tried on the theory that the bank broke faith with the drawer, when it put the draft in circulation. The briefs make no reference

to fraud in the negotiation of the draft; it was first suggested in the oral argument. We are constrained to apply the rule that a case must be considered on appeal in accordance with the theory on which it was tried in the court below both as regards the law and the facts. 1 Dunnell, Minn. Dig. § 401.

In passing, it is proper to suggest that an amendment of the answer may be necessary to enable defendant to litigate questions respecting the title to the draft.

The order denying a new trial is reversed and a new trial granted.