# UNITED STATES MORTGAGE COMPANY v. HOTEL RADISSON COMPANY.[1]

December 12, 1924.

No. 24,262.

**Evidence insufficient to prove maker and buyer of draft were partners.**
1. The evidence does not sustain the defendant's claim that the plaintiff, the purchaser of a draft accepted by the defendant, and the drawer of the draft were together conducting a business in connection with which the draft was drawn so that the plaintiff was not an innocent purchaser.

**Plaintiff an innocent purchaser of draft.**
2. The plaintiff, though it be *held* that under the Negotiable Instruments Act it had the burden of proving good faith, was an innocent purchaser as a matter of law.

Action in the district court for Hennepin county to recover $2,598.01. The case was tried before Salmon, J., and a jury which returned a verdict in favor of defendant. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed.

*William P. O'Brien, Lancaster, Simpson, Junell & Dorsey* and *J. H. Coleman,* for appellant.

*Trussell, Smiley & Collins* and *C. D. Gould,* for respondent.

[1]Reported in 201 N. W. 318.

DIBELL, J.

Action to recover on a trade acceptance. There was a verdict for the defendant. The plaintiff appeals from the order denying its alternative motion for judgment or a new trial.

At Chicago on March 28, 1921, the Lincoln Motor Sales Company drew on the defendant a draft, in a form commonly called a trade acceptance, for $2,596, payable on or before September 1, 1921. It was accepted by the defendant under the same date "payable at Northwestern National Bank, Minneapolis." On April 6 the Lincoln company sold and indorsed it to the plaintiff for value.

The acceptance was given for an auto truck which it was intended would be delivered about the first of September. The Lincoln company sent the defendant an order blank, specification sheet and the trade acceptance. The manager of the defendant signed the order blank and the trade acceptance. He pinned them to the specification sheet and returned them to the Lincoln company. He says that he "wrote on the order blank that the trade acceptance was to be attached to the bill of lading and forwarded to a bank for collection when the truck had been shipped to me." The manager understood that "the factory insisted on a certain amount being paid and this paper is construed as payment." He says, though this seems by way of conclusion, that it was "contrary to the agreement" that the acceptance be negotiated. The Lincoln company sold it at a discount of ten per cent which was equivalent to 2 per cent a month. This was the basis upon which other paper was sold. The truck was not delivered. The Lincoln company became bankrupt in the fall of 1921. The defendant has a defense against the acceptance as against the Lincoln company.

1. One claim of the defendant, and it is a defense if established, is that the Lincoln company and plaintiff were affiliated concerns, operating a joint enterprise, conducting one business, the plaintiff furnishing the money and covering the real transaction under the guise of discounting notes and acceptances, and the Lincoln company doing the business of selling. If so the plaintiff is in no better position than the Lincoln company. An attentive consideration of the record discovers no evidence to that effect. There can be drawn

from it no just suspicion that the two were one. The fact is demonstrated to be otherwise. It is true that the Lincoln company did a large part of its business with the plaintiff, but by no means all of it. The plaintiff had in the Lincoln company a large customer; but the business with that company was but a fraction of its business. There was no common stock ownership, no common directors or officers nor a joint management. The defendant's claim is groundless.

2. The defendant's remaining claim is that the plaintiff is not an innocent purchaser. This issue was submitted to the jury and the finding is in favor of the defendant. The question for us is whether it is sustained by the evidence.

There is a suggestion in the briefs that the acceptance was negotiated in breach of faith and under circumstances amounting to a fraud within Neg. Inst. Act, § 55, G. S. 1913, § 5867, and that under Neg. Inst. Act, § 59, G. S. 1913, § 5871, the burden of proving that it was a good faith purchaser is upon the plaintiff. The basis of the claim is that the understanding between the Lincoln company and the defendant, derivable from the papers which we have noted, was that the acceptance was not to be negotiated. Probably the facts do not bring the case within the rule. Snelling State Bank v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663; McWethy v. Norby, 143 Minn. 386, 173 N. W. 803; Wade v. National Bank, 144 Minn. 187, 174 N. W. 889; Farmers & M. S. Bank v. Graif, 150 Minn. 315, 185 N. W. 374; First Nat. Bank v. Malmquist, 158 Minn. 140, 197 N. W. 271; St. Paul State Bank v. Rippe Grain Co. 160 Minn. 102, 199 N. W. 519, and cases cited; 5 U. L. A. 270-298; note 6 A. L. R. 1663. But we need not determine the question. Though the burden of proof be put upon the plaintiff, the evidence leaves no question of fact for the jury upon the issue of good faith purchaser. The plaintiff and the Lincoln company had their places of business in Chicago. They did business together in a large way. Value was given for the acceptance. It was bought as other acceptances were bought. The testimony of the plaintiff's officer in charge of the transaction is frank. There are no suspicious circumstances. The plaintiff and the defendant

are innocent. One must suffer loss. The policy of the Negotiable Instruments Act puts it upon the defendant starting the paper in circulation just as the common law did before. The facts are fully disclosed. The defendant has no defense against the plaintiff. There should be judgment notwithstanding the verdict.

Order reversed.