## GROCERS, INC. v. HENRY HORSTMAN.[1]

February 16, 1951.

No. 35,191.

---

[1]Reported in 46 N. W. (2d) 254.

*Levine & Levine,* for appellant.
*Ryan & Paulson,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff, a Minnesota corporation, brings this action against defendant on his guarantee of a promissory note in the sum of $7,000. The note, dated December 5, 1947, is payable to plaintiff and was made by C. A. Hafslund and by M. J. Horstman, a nephew of defendant. It was delivered by the latter to plaintiff on December 7, 1947, as part of the purchase price on the sale by plaintiff to Hafslund and M. J. Horstman of a grocery and meat business known as the Stinson Food Market in Minneapolis.

Defendant admitted his execution of the note as endorser on

December 5, 1947, and his delivery thereof on that date to M. J. Horstman at Worthington, where the parties were negotiating the transaction. He testified as to the terms of the agreement orally made at Worthington that date by plaintiff, through I. H. Levine, its treasurer and one of its principal stockholders, and Hafslund and M. J. Horstman, as purchasers. His testimony established that plaintiff was to sell the grocery business, including the stock and fixtures, to Hafslund and M. J. Horstman for $13,000, to accept as partial payment thereon the note of $7,000 endorsed by defendant, and to carry the purchasers without security for the remaining $6,000 due; that plaintiff was to deliver a bill of sale to the purchasers of the stock, fixtures, and other assets of the business, and an assignment of the lessee's interest in a five-year lease on the premises in which the building was located; that, upon delivery of such instruments to the purchasers, M. J. Horstman was to deliver the $7,000 note to plaintiff in partial payment as above indicated; and that, after delivery of such instruments, plaintiff was to negotiate the $7,000 note in Minneapolis, which the purchasers were to repay from the proceeds of the business after executing and delivering to plaintiff a chattel mortgage on the fixtures thereof as security therefor.

Defendant testified that after the terms of sale were thus agreed upon he delivered the note to M. J. Horstman, and in the presence and hearing of I. H. Levine specifically instructed M. J. Horstman that no delivery of the note to plaintiff was to be made until the instruments of transfer carrying out the terms of the sale as orally agreed upon were delivered to the purchasers.

The evidence discloses that after the delivery of the note as described defendant returned to his home at Isle, Minnesota; that at no time thereafter did he vary his described instructions or consent to any change in the terms of the transaction or again discuss the matter with any of the parties; that on December 7, 1947, without his knowledge or consent, plaintiff and Hafslund and M. J. Horstman entered into a new and different transaction whereby the grocery store, together with the meat department therein, which

had not previously been discussed, were sold to Hafslund and M. J. Horstman for the sum of $18,575, pursuant to a conditional sales contract; that no bill of sale of the stock and fixtures and no assignment of the lease were delivered at that time or at any time thereafter; and that, contrary to defendant's specific instructions, plaintiff, through its treasurer, I. H. Levine, on that date induced M. J. Horstman to deliver to plaintiff the $7,000 note on which defendant's endorsement had been placed as partial payment on the sale thus made.

It was further established that about two weeks *after* this transaction M. J. Horstman wrote defendant and advised him that the transaction had been completed and that he had commenced business. In this letter he stated that "Mr. Levine did make a few changes in the deal," but no reference was made therein as to what these changes were. There is nothing in the record otherwise to establish that defendant had agreed to the new terms of sale.

Approximately six months later it developed that the purchasers were unable to make a success of the business, and it was closed. At that time, I. H. Levine undertook to dispose of the property on their behalf, and on May 22, 1948, he sold the business for $12,500. To make up the full deficiency between this selling price and the amount due from Hafslund and M. J. Horstman on the conditional sales contract above described, plaintiff accepted and now holds their promissory notes.

On November 12, 1948, plaintiff instituted this action against defendant. On the issue of plaintiff's fraud in obtaining the note through misrepresentations, a verdict was returned in favor of defendant.

On appeal, plaintiff contends that (1) the evidence of fraud is not sufficient to sustain a verdict in favor of defendant; (2) defendant, by failing to object after being advised that changes in the terms of sale had been made, had waived his defense of fraud; and (3) the court erred in instructing the jury that "if * * * Pat [M. J. Horstman] and Hafslund were making misrepresentations about this business, and the plaintiff through its agent Levine knew

that they were making those representations, why, it would be for the Jury to say whether the representations thus made were to be charged against the plaintiff, or not."

■ There is ample evidence to support a verdict in defendant's favor on the issue of fraud. It is clear that the delivery of the note by defendant to his nephew, M. J. Horstman, was a delivery in escrow pursuant to specific instructions, and that plaintiff, knowing such instructions, in violation thereof, fraudulently obtained delivery of the note from the escrow holder.

The record is definite that the only transaction discussed when all parties were present was the sale of the business for $13,000, and it was on this basis that defendant endorsed the note and delivered it to M. J. Horstman for use as a down payment thereon. This is supported not only by the testimony of defendant and other witnesses, but also by admissions on the part of plaintiff's treasurer, I. H. Levine. The latter testified:

"A. The only thing that was discussed with Mr. Horstman was for the sale of the grocery business, and nothing else.

"Q. In other words, the sale of the meat market was not then discussed?

"A. No, sir.

"Q. Did defendant Horstman ask you anything in connection with what property was being covered under the $13,000.00 transaction?

"A. No, he did not."

He admitted that defendant, in his presence, had instructed M. J. Horstman not to deliver the note until the sale upon the terms discussed had been closed and a bill of sale in connection therewith delivered. At that time, the record clearly establishes, the only transaction that had been discussed was the sale at $13,000. Levine further testified:

"Q. Did you hear defendant Horstman tell Pat [M. J. Horst-

man] not to give you the note until he, Pat, had received a bill of sale from you?

\* \* \* \* \*

"The Witness. I did. He told Pat to keep this note until the deal was closed, not to deliver it to me."

And Levine testified that defendant told M. J. Horstman:

" 'You give the note to Levine when the deal is consummated; you don't give it to him in advance', \* \* \*."

With reference to the changes which were made without further discussion with defendant, Levine testified:

"Q. Were there any negotiations subsequent \* \* \* which changed this original deal?

"A. To this effect, that when we closed the deal they took over the meat department, also.

"Q. And that changed the price and consideration to be paid?

"A. \* \* \* not only did that change the price but it also included some obligations that they assumed in this conditional sales contract, like the accounts receivable, \* \* \* so that altogether it ran to $18,500.00 on the day that the papers were drawn and the settlement was made.

\* \* \* \* \*

"Q. No discussion of this meat department or change in the total from $13,000.00 to $18,575.00 was ever discussed between you and the defendant, or in your presence with the defendant and some one else?

"A. No."

Other witnesses corroborated defendant as to the terms of the sale. A. W. Hoodecheck, a banker at whose office in Worthington the terms of sale were orally agreed upon on December 5, 1947, testified that the only sales price discussed there was the sum of $13,000; that the note was then made out by Mr. Levine and signed by defendant; that it was then given to M. J. Horstman at the request of defendant, who instructed M. J. Horstman to deliver it to

plaintiff upon completion of the deal and delivery of the bill of sale to the purchasers; that there was also a discussion there to the effect that the note was to be negotiated by plaintiff after defendant was secured by a chattel mortgage on the store fixtures, plaintiff to carry the additional $6,000 due without security. The testimony of C. A. Hafslund and M. J. Horstman was substantially in accord with that of Hoodecheck and defendant.

■ It is clear that plaintiff's title to the note was defective as the result of the delivery thereof to it under circumstances amounting to fraud. It had been placed in the hands of M. J. Horstman in the presence of plaintiff's agent with specific instructions not to be delivered to plaintiff until the happening of certain events. Plaintiff's procurement thereof in violation of such instructions was fraudulent and tortious, rendering plaintiff's title defective and nullifying the rights which it might otherwise have acquired had there been compliance with the conditions of the escrow. 1 Dunnell, Dig. & Supp. §§ 879, 952a; McWethy v. Norby, 143 Minn. 386, 173 N. W. 803; State Bank v. Missia, 144 Minn. 410, 175 N. W. 614; Albrecht v. Rathai, 150 Minn. 256, 185 N. W. 259; St. Paul State Bank v. Rippe Grain & Milling Co. 160 Minn. 102, 199 N. W. 519; 7 Am. Jur., Bills and Notes, § 40; 19 Am. Jur., Escrow, § 22; Annotations, 48 A. L. R. 408, 430, 54 A. L. R. 1246, 17 L. R. A. 511. It follows that the jury's verdict in defendant's favor on the issue of fraud is amply sustained.

■ There is nothing in the record to support a finding that defendant ratified the terms of the sale as it was finally consummated. Ratification sufficient to support a waiver of prior rights must be made with full knowledge of all material facts. Triggs v. Jones, 46 Minn. 277, 48 N. W. 1113; Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476; Bergstrom v. Pickett, 148 Minn. 224, 181 N. W. 343; 19 Am. Jur., Escrow, § 24. Here, quite the contrary is indicated. Defendant was advised only that a few changes in the transaction had been made. Such advice, rather than placing him on notice sufficient to support a ratification of the new terms, would be more likely to have the effect of lulling him into a

false belief that the transaction had been consummated substantially in accordance with the prior agreement of the parties. The drastic variation therefrom in the transaction as finally closed could scarcely be held to have been ratified by defendant on the basis of the information forwarded to him that only a few changes in the original agreement had been made.

■ Plaintiff charges the court erred in instructing the jury that "if * * * Pat [M. J. Horstman] and Hafslund were making misrepresentations about this business, and the plaintiff through its agent Levine knew that they were making those representations, why, it would be for the Jury to say whether the representations thus made were to be charged against the plaintiff, or not." We do not find any error in this instruction. If anything, it was more favorable to plaintiff than the evidence justified, in view of the admissions of its agent, Levine, that he had heard defendant specifically instruct M. J. Horstman that the note was to be delivered to plaintiff only upon consummation of the deal as discussed at $13,000. Even though plaintiff had never intended to sell for less than $18,575, its silence, when defendant was led to believe that the sale was to be at $13,000, clearly would constitute fraud. King v. International Lbr. Co. 156 Minn. 494, 195 N. W. 450; Restatement, Contracts, § 472(1) (b); 5 Williston, Contracts (Rev. ed.) § 1497. See, Chubbuck v. Cleveland, 37 Minn. 466, 35 N. W. 362.

Affirmed.