**Brodhead Motor Company, a Corporation, Plaintiff-Appellee, v. Mid-States Finance Company, a Corporation, Defendant-Appellant.**

Gen. No. 61–F–17.

Fourth District.

June 15, 1961.

Mondhink, Mosele & Wiseman, Harry R. Mondhink, all of Alton, for appellant.

■■■■■■■■■■■■■■■■■■■■■

Wagner, Conner, Ferguson, Bertrand & Baker, all of East St. Louis, for appellee.

SCHEINEMAN, J.

This was a suit on a check drawn by defendant, payable to a third party who indorsed and delivered it to plaintiff. The trial court directed a verdict in favor of plaintiff for the amount of the check plus interest. On this appeal defendant contends plaintiff was not a holder in due course, therefore is subject to defenses available against the payee-indorser.

The essential facts are not in dispute. Plaintiff had sold a truck to one Douglas, for which he owed them a balance of $2530. Plaintiff's representatives tried to collect this account but were unsuccessful for a time. Finally, Douglas told them he had arranged to borrow the money from a finance company. At his request, an agent of plaintiff rode with him to defendant's office, which Douglas entered, leaving plaintiff's agent in the vehicle.

When Douglas came out of the office, he indorsed and delivered to plaintiff's agent, a check for $2525. He made no statement as to what where his arrangements with the defendant. Plaintiff's bookkeeper entered a credit on the Douglas account for $2525 and the remaining five dollars was paid in cash by Douglas on or near the same date, so that the account was balanced.

Evidence for defendant discloses that the arrangements which Douglas had made with it did not materialize, therefore defendant notified its bank to stop payment on the check. When the check reached the drawee bank through the clearing channels, it was dishonored. Upon receiving notice of this, plaintiff's bookkeeper again debited the Douglas account for $2525 and plaintiff renewed efforts to collect from

275

Douglas. He filed bankruptcy and plaintiff filed its claim for $2525 as an unpaid account. It is evident that defendant has no liability to Douglas, and the sole question is whether the plaintiff is a holder in due course.

The defendant does not contend that the plaintiff had notice of its defenses, nor that a past due obligation is not sufficient consideration for the giving of a negotiable instrument. It does contend that there was no actual consideration, in that the plaintiff, by its re-debiting the Douglas account and its subsequent efforts to collect from him, showed that it did not take the check as total or partial satisfaction of the account but that the credit to his account was only provisional. The defense cites as law to this effect several cases from California, New York and Iowa. It is argued that plaintiff gave up nothing for the check, and is no worse off when payment was stopped than it was before.

The rule followed in California, New York and Iowa is a minority view. The majority of jurisdictions hold that the indorsee of a negotiable paper, taken to apply on a previous debt, is a holder in due course. See note in 80 ALR 670. It is there said of minority view: "it is hard to see wherein the distinction lies between a note taken in payment (in part or in whole) of an antecedent debt, and one taken as a credit on such debt . . . ."

In Illinois, the law is and has always been, in this situation, that the indorsee is a holder in due course. An early case was Manning v. McClure, 36 Ill. 490, wherein the court cited and discussed some of the cases holding the opposite view. In answer to the argument that the creditor is in no worse position than before, it was said:

"It is admitted in all the cases, that if the indorsee, at the time of taking the note as collateral

security for a pre-existing debt, gives a new consideration as, for example, if he makes a valid agreement to give further time, he then takes it free from latent equities. But it is argued that in the absence of any such new consideration, or any such agreement, the indorsee is in no worse condition than he would have been if he had not received the note . . . We have no hesitation in saying, that the assumption that time is not in fact given, because it is not expressly agreed to be given, and that therefore the indorsee is not placed in a worse position by letting in the latent equities than he would have occupied if he had not received the note, is at variance with the general experience of all men whose business makes them cognizant of affairs of this character. What inducement has the debtor to part with his negotiable paper except the expectation of further forbearance? "

In another case, Mazer Co., Inc. v. Blauer-Goldstone Co., 259 Ill. App. 305, where a note was taken but no actual credit entered on the antecedent debt, the court said of the same argument that is made in the case at bar:

"The answer to this contention is obvious. The evidence of the plaintiff is to the effect that the note was accepted in liquidation of the account in part, when the money is received in payment of the note.

"Under the Negotiable Instruments Act, an antecedent or pre-existing claim constitutes value, and in this case, the note was taken by plaintiff to secure the payment of its account. . . . If the plaintiff was to credit the account of Kansteiner, Inc. when the note was, in fact, paid, reasonable inference necessarily would follow that the plaintiff was to forbear and not press the payment of

its debt, and the acceptance of the note was collateral security of this account."

Again, in Elgin Nat. Bank v. Goeck, 259 Ill. 403, 129 N.E. 149, is is said:

"It is the well established law in this jurisdiction that an indorsee of a negotiable note who has taken it before maturity, as collateral security for a pre-existing debt and without any express agreement is deemed a holder for a valuable consideration, and that he holds it free from latent defenses on the part of the maker."

In First Nat. Bank of Lacon v. Bauer Poultry Corp., 345 Ill. App. 315, 103 N.E.2d 160, the plaintiff had cashed a check for $3000.00 on which payment was stopped by the maker. The indorser owed the bank other debts to a total in excess of $13,000, including the $3000 check, and he assigned all of his assets to the bank, which liquidated them, but was left with an unpaid balance of at least $3000. The court found no difficulty in affirming plaintiff's judgment, and held that the attempt to collect the whole indebtedness from the indorser did not prevent it from collecting from the drawer.

By Section 206 of Ch. 33 Ill. Rev. St. the provisions of the Negotiable Instruments Act apply to checks. By Section 45 a pre-existing debt is consideration for an instrument, whether taken in payment or merely as security.

The rule advocated by the defense would mean a creditor who takes negotiable paper to be applied on a previous debt when paid, must thereupon cease any effort to collect from his debtor, or lose his rights against the maker. There is no logic to such a principle. The right to collect from the maker of the instrument, free from latent equities, flows from the

278

Law Merchant which placed a high value on negotiability. But the indorsee also has a right to proceed against the indorser, who is the real debtor, and the law should not discourage efforts to collect from the real debtor.

■ Douglas was being pressed for payment of the open account and when he indorsed and delivered the check to plaintiff, he was relieved of that pressure, at least for a few days. At that time, when the plaintiff accepted the check from Douglas and gave him credit for it, plaintiff was clearly a holder in due course. It can not be good law that it loses that status merely because it attempted first to collect the dishonored check from the man who was, equitably, the one who should pay if possible.

■ This court adheres to the precedents in this state that one who takes a negotiable instrument in due course, without an express agreement that it satisfies a pre-existing debt, nevertheless takes it, at least, as security, and may proceed first against the indorser, without losing its status as a holder in due course. The judgment is affirmed.

Judgment affirmed.

CULBERTSON, P.J. and HOFFMAN, J., concur.